DECISION.
Defendant-appellant Derald Terry has taken the instant appeal from his conviction, following a jury trial, on two counts of felonious assault and a single count of aggravated robbery. He advances on appeal six assignments of error. Finding merit to the appellant's challenge to the trial court's compliance with the controlling sentencing provisions in imposing consecutive sentences, we reverse in part the judgment of conviction entered below.
The charges against the appellant arose in connection with the appellant's June 18, 2000, altercation with his landlord, eighty-seven-year-old Jessie Washington, and Washington's nephew, Dwight Brown. On that date, at approximately 9:00 p.m., police officers responding to an emergency call arrived at Washington's house to find its rooms in disarray and its occupants, Washington and Brown, bloody and battered. An investigation into the matter resulted in the appellant's apprehension and arrest one week later.
On July 3, 2000, the Hamilton County Grand Jury returned a five-count indictment, charging the appellant with aggravated robbery, robbery, and three counts of felonious assault. The aggravated-robbery count and two of the felonious-assault counts carried firearm specifications.
The charges were tried to a jury. At trial, Brown testified that he had, for some time, lived with and cared for his uncle. Brown stated that he had met the appellant on the street in front of Washington's house, when the appellant had solicited a job doing yard work. Then, in March or April of 2000, Brown offered the appellant living space in Washington's basement, in exchange for the appellant's payment of a minimal amount of rent, his assistance in caring for Washington, and his promise that he would not have visitors at the house.
On the evening of June 18, Brown encountered in the basement a stranger whom the appellant had left unattended. Brown escorted the stranger from the house. When the appellant returned to the house a short time later, Brown demanded that he vacate the basement and afforded him ten minutes to gather his belongings. The appellant appeared to comply, but then summoned Brown to the basement, where he attacked Brown with a sharp object. Brown fled up the basement stairs and into Washington's bedroom. The appellant followed and there continued his assault upon Brown. When the appellant reached for the nightstand drawer, where Brown knew that Washington kept a handgun, Brown ran to a neighbor's house, where he used the telephone to summon the authorities. Brown then returned to the house to find Washington lying in a pool of the blood that flowed from the multiple lacerations on his head.
Washington testified at trial that, after Brown had fled from the house, the appellant had turned on him, had beaten him about the head with the handgun, and had escaped out the window. After he returned from the hospital, Washington found that the handgun and more than $1,400 in cash, which he had hidden in his pillowcase, were missing. The police subsequently recovered the gun from a trash bin located several blocks from Washington's house. The gun, which Washington asserted had been operable, was, upon its recovery, inoperable due to its "pushed in" trigger guard.
The appellant testified to an alternative version of his relationship with Brown and of the events of June 18. The appellant claimed that he and Brown had first met in December 1999, when a mutual friend had brought Brown to the appellant's apartment to share Brown's drugs, and that they had thereafter met regularly for the same purpose. The appellant asserted that Brown's June 18 tirade over the appellant's unattended guest had been merely the latest in a series of tirades, all of which had been prompted by Brown's fits of remorse over his own substance-abuse problems. According to the appellant, Brown had instigated their physical altercation by "putting his hands on" him, and he had struck Brown with a screwdriver merely as a means of defending himself. The appellant then followed Brown upstairs and into Washington's bedroom in an attempt to prevent Brown from securing the knife that Brown had called upstairs for Washington to provide or the handgun that he knew Washington kept in his bedroom. The appellant asserted that, after Brown had fled from the house, Washington had grabbed him, and he had reacted reflexively, striking Washington just once with the gun in an effort to extricate himself.
The jury returned verdicts finding the appellant not guilty of felonious assault upon Brown, but guilty of aggravated robbery, robbery, and the two counts of felonious assault upon Washington. The jury also returned positive findings on the accompanying specifications. The trial court, consistent with R.C. 2941.25, declined to sentence the appellant upon the verdict finding him guilty of robbery, but imposed terms of confinement of ten years for aggravated robbery, three years on the accompanying specification, and five years on each count charging felonious assault. The court ordered that the prison terms for felonious assault be served concurrently, but then made them consecutive to the terms of confinement imposed for aggravated robbery and the firearm specification.
 I.
In his first assignment of error, the appellant contends that the trial court erred in permitting the prosecution to exercise a peremptory challenge in a racially discriminatory manner. We find no merit to this contention.
The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination by the prosecution in exercising a peremptory challenge to excuse a juror on account of his race. See Batson v.Kentucky (1986), 476 U.S. 79, 89, 106 S.Ct. 1712, 1719; State v.Hernandez (1992), 63 Ohio St.3d 577, 581, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279. To establish a prima facie case of purposeful discrimination, an accused must show (1) that the prosecution has peremptorily challenged a member of a recognized racial group, and (2) that these facts and any other relevant circumstances raise the inference that the prosecution has exercised its peremptory challenge to exclude the juror on account of his race. Once the accused has established a prima facie case, the burden of production shifts to the prosecution to tender a race-neutral explanation. See Statev. Hill (1995), 73 Ohio St.3d 433, 444-445, 653 N.E.2d 271, 282, certiorari denied (1996), 516 U.S. 1079, 116 S.Ct. 788 (citing State v.Hernandez, supra at 582, 589 N.E.2d at 1313). The trial court must then determine whether the accused has proved purposeful racial discrimination. A finding by the trial court that the accused has failed to prove purposeful discrimination will not be reversed on appeal in the absence of a determination that it was "`clearly erroneous.'" State v.Hernandez, supra at 582-583, 589 N.E.2d at 1313-1314 (quoting Hernandezv. New York [1991], 500 U.S. 352, 369, 111 S.Ct. 1859, 1871).
In the proceedings below, defense counsel offered a timely and specific objection to the prosecution's exercise of a peremptory challenge to strike an African-American juror. The trial court preempted the assistant prosecutor's response by stating, "Wait a minute. You don't have to respond. Objection overruled." Nevertheless, immediately after the jury had been seated, the court acknowledged that the assistant prosecutor was "absolutely right, * * * that [he did] have to give a reason." The court thereupon permitted the assistant prosecutor to state for the record that his "reason" for excusing the juror was that he "was uncomfortable with her sitting on conflict resolution." Defense counsel declined to offer any further argument.
The United States Supreme Court has decreed that the explanation for the exercise of a peremptory challenge to strike a member of a recognized racial group need not be "persuasive or even plausible. ` * * * [T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Purkett v. Elem (1995),514 U.S. 765, 767-768, 115 S.Ct. 1769, 1771 (quoting Hernandez v. NewYork, supra at 360, 111 S.Ct. at 1866).
No discriminatory intent can be inferred from the explanation offered in the proceedings below. Nor does the record otherwise suggest that the explanation was a pretext for racial discrimination. Thus, the trial court's determination that the appellant had failed to prove purposeful racial discrimination cannot be said to have been clearly erroneous. We, therefore, hold that the court did not err in permitting the prosecution to exclude the prospective juror. Accordingly, we overrule the first assignment of error.
 II.
In his second assignment of error, the appellant contends that his right to an impartial jury was compromised by the trial court's failure to declare a mistrial or to give a curative instruction, when a prospective juror, during the voir dire examination, professed before the panel of prospective jurors his belief that the appellant was guilty. This contention is untenable.
During the voir dire examination conducted in the proceedings below, the trial court inquired into whether any prospective juror, "because of the nature of the case and the issues that [he or she had] heard would be involved in this case[,] fe[lt] that he or she could not sit and listen to the evidence and the law given to [him or her] and arrive at a fair and impartial verdict * * * ." Prospective juror Hummel responded that he "already thought this guy [was] guilty." Without prompting by defense counsel, the trial court called Hummel to the bench, reprimanded him for what the court perceived as a transparent attempt to avoid jury duty, and returned him to his seat with the admonition that he "keep [his] mouth shut with regard to what you think or whether guilt or innocence [sic] * * * ." The court then resumed its voir dire examination with an explanation of the burden of proof and the presumption of innocence and an inquiry into the ability of prospective jurors to hold the state to its burden and to afford the accused the presumption. The prospective jurors offered no response to the inquiry that might be said to have borne the taint of the prospective juror's improvident remark, and the court ultimately seated a jury with one alternate, without including Hummel and thus without reaching the question of his suitability for service on the jury.
Defense counsel did not object, move for a mistrial, or request a curative instruction beyond those instructions that the court had incorporated into its question concerning the burden of proof and the presumption of innocence. Thus, the appellant waived consideration of this matter on appeal, unless it rose to the level of plain error. See Crim.R. 52(B). On the record before us, we cannot say that, but for the trial court's retention of the original panel of jurors without further instruction, the outcome of the trial would have been different. SeeState v. Underwood (1983), 3 Ohio St.3d 12, 44 N.E.2d 1332, syllabus. We, therefore, overrule the second assignment of error.
 III.
We address next the appellant's fourth assignment of error, in which he contends that the trial court violated his right to a fair trial when it permitted the assistant prosecutor, during cross-examination of the appellant, to hand the appellant Washington's handgun and ask him "prejudicial" questions about the gun's "weight and use during the alleged offense." This challenge is feckless.
During the state's case-in-chief, Brown and Washington each identified as belonging to Washington the .22- caliber handgun with the bent trigger guard recovered by the police from a trash bin near Washington's house. The appellant, on direct examination, conceded that he had used Washington's handgun as a bludgeon to extricate himself from Washington's grasp. But, despite uncontroverted proof that Washington had sustained multiple head lacerations, the appellant staunchly maintained that he had struck Washington with the gun only once. On cross-examination, the appellant expressed uncertainty, based upon his limited contact with the weapon, as to whether the handgun offered into evidence was the gun with which he had struck Washington. The assistant prosecutor then handed the appellant the handgun and, without objection from defense counsel, initiated the following exchange:
Does that look like the same gun?
* * * I don't know.
Feel how heavy that gun is. It's a heavy gun, isn't it?
Yeah.
Does that feel like the same gun?
 It looks like it could look like the same gun [sic], but I can't — I'm not sure if its the same gun. * * *
 How many times did you crack [Washington] over the head with that gun?
A. Hit him one time.
 The appellant asserts on appeal that the "theatrical display" of placing the gun in the appellant's hand and quizzing him about its use in the offense was so "devastating to his case" and so "inflame[d] the passions, prejudices and fear[s] [of] the jurors" that the trial court should have sua sponte intervened and declared a mistrial.
Again, in the absence of a timely objection, the appellant waived consideration of this matter on appeal, unless it rose to the level of plain error. See Crim.R. 52(B). On the record before us, we cannot say that, had the trial court precluded this mode of interrogation, the outcome of a trial would have been different. See Underwood, supra, syllabus. We, therefore, overrule the fourth assignment of error.
 IV.
In his third assignment of error, the appellant contends that he was denied the effective assistance of counsel at trial, when his counsel (1) failed to request a mistrial or a curative instruction based on prospective juror Hummel's statement of his belief that the appellant was guilty, and (2) failed to object to the manner in which the assistant prosecutor had cross-examined him concerning Washington's gun. We find no merit to either aspect of this contention.
Trial counsel's performance will not be deemed ineffective unless the appellant shows that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington (1984), 466 U.S. 668,688, 104 S.Ct. 2052, 2064, and that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, 143, 538 N.E.2d 373, 380. We have addressed the allegations of a tainted jury pool and improper cross-examination under the second and fourth assignments of error, and we concluded that the alleged errors were not outcome-determinative. Similarly, the appellant cannot be said to have been prejudiced by defense counsel's performance with respect to these matters, when our examination of the record of the proceedings below does not disclose a reasonable probability that, but for the alleged omissions of counsel, either individually or in the aggregate, the result of the trial would have been different. SeeBradley, supra. Accordingly, we overrule the third assignment of error.
 IV.
The challenge presented in the appellant's fifth assignment of error, to the balance struck by the jury in weighing the evidence, is equally untenable. The verdicts returned below were not contrary to the manifest weight of the evidence, when nothing in the record of the proceedings at trial suggests that the jury, in resolving the conflicts in the evidence, lost its way or created such a manifest miscarriage of justice as to warrant the reversal of the appellant's convictions. See Tibbs v.Florida (1982), 457 U.S. 31, 102 S.Ct. 2211; State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717. We, therefore, overrule the fifth assignment of error.
 V.
In his sixth and final assignment of error, the appellant contends that neither the controlling sentencing provisions nor the evidence supported the imposition of the maximum possible prison term for aggravated robbery or the imposition of consecutive sentences. We find this challenge to be well taken in part.
R.C. 2929.19 mandates that the imposition of a prison term be predicated upon specific findings. Thus, a sentencing court must "make a finding that gives its reasons" for imposing consecutive prison terms or for imposing a prison term that is the maximum allowable prison term for an offense for which the maximum term is not mandated. See R.C.2929.19(B)(2)(c) and 2929.19(B)(2)(e).
On appeal, an offender may challenge the imposition of a nonmandatory maximum prison term or the imposition of any sentence that is otherwise "contrary to law." See R.C. 2953.08(A)(1) and 2953.08(A)(4). If the sentencing court failed to make the findings relative to the imposition of consecutive terms of imprisonment, the appellate court must "remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings." See R.C. 2953.08(G)(1). Otherwise, the appellate court "may increase, reduce, or otherwise modify" an appealable sentence or "may vacate the sentence and remand the matter to the sentencing court for resentencing," if the appellate court "clearly and convincingly finds either * * * [t]hat the record does not support the sentencing court's findings" in support of its imposition of consecutive sentences, or "[t]hat the sentence is otherwise contrary to law." See R.C. 2953.08(G)(2).
The trial court sentenced the appellant to the maximum prison term of ten years for aggravated robbery. See R.C. 2911.01 and 2929.14(A)(1). R.C. 2929.14 permits a sentencing court to impose the maximum prison term authorized for an offense only upon "offenders who [have] committed the worst forms of the offense, * * * offenders who pose the greatest likelihood of committing future crimes," and offenders who satisfy the statutory definition of a "major drug offender" or a "repeat violent offender." See R.C. 2929.14(C).
The felony-sentencing worksheet prepared and journalized by the court below reflected the court's finding, in support of its imposition of the maximum sentence for aggravated robbery, that the appellant had "committed the worst form of the offense" and "[p]ose[d] the greatest likelihood of recidivism." The worksheet also reflected findings, relative to the "seriousness" of the offense, that the "[v]ictim's age or physical/mental condition exacerbated [his] injury," and that the appellant's "relationship to the victim [had] facilitated the act." And, relative to the risk of "recidivism," the worksheet contained findings that the appellant had had a "[p]rior delinquency [or] convictions" and had an "[u]nacknowledged substance abuse pattern." The court echoed these findings in its remarks from the bench. The court thus satisfied the R.C. 2929.14(C) and 2929.19(B)(2)(e) requirement that it "make [the] finding[s] that give its reason[s] for" imposing the maximum sentence. The record provides an evidentiary basis for those findings. Accordingly, we conclude that the imposition of the maximum sentence for aggravated robbery was neither contrary to law nor unsupported by the evidence.
The court also ordered that the ten-year prison term imposed for aggravated robbery be served consecutively to the three-year term of confinement imposed for the firearm specification and the five-year concurrent terms imposed for felonious assault. Prison terms imposed for multiple offenses may be made consecutive only upon the following findings:
 "that the consecutive service is necessary to protect the public from future crime or to punish the offender"; and
 "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and
 that (a) the offender committed the offenses while awaiting trial or sentencing, or while under a residential, nonresidential or financial sanction, see R.C. 2929.16 through 2929.18, or while under post-release control for a prior offense, or (b) "[t]he harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct," or (c) the offender's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
See R.C. 2929.14(E)(4).
The court recorded on its felony-sentencing worksheet and declared from the bench that consecutive sentences were "require[d]" by the appellant's "criminal history." The court also effectively found that "consecutive service is necessary to protect the public from future crime or to punish the offender," when it recorded on its worksheet and repeated from the bench its determination that consecutive sentences were "necessary to fulfill [the] purpose[s] of R.C. 2929.11." See R.C. 2929.11(A) (which provides that "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender"). But the court failed to state its reasons for this finding. Moreover, the court failed to record on the worksheet, or to provide by its remarks from the bench, the necessary finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Thus, the court failed, contrary to R.C. 2929.19(B)(2)(c), to "make * * * the finding[s] that give its reasons" for imposing, pursuant to R.C.2929.14(E)(4), consecutive terms of confinement. In the absence of such findings, the imposition of consecutive sentences was contrary to law.
On the basis of the foregoing, we sustain in part the sixth assignment of error, reverse the judgment of conviction to the extent that it imposes consecutive sentences, and remand this cause to the trial court for further proceedings consistent with law and this Decision. In all other respects, we affirm the judgment of the trial court.
Judgment affirmed in part and reversed in part, and cause remanded.
Gorman, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.