Jose CUSTODIO, Petitioner,

v.

George DUNCANS, Superintendent of Great Meadow Correctional Facility, Respondent.

Nos. 99–CV–2561 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

June 11, 2003.

titioner. Petitioner also confessed to the killings in writing and on videotape, but the prosecution opted not to enter those confessions into evidence. Petitioner was sentenced to 18 years to life in prison.

In the present petition he claims that his due process and equal protection rights were violated when the prosecutor used a peremptory challenge on voir dire to exclude a prospective African American juror. He also claims that the prosecutor committed misconduct when she stated to the jury on summation that petitioner had confessed to the crime, thus denying him a fair trial. These claims have been exhausted in state court and the petition is timely.

Florence M. Sullivan, The Office of the District Attorney, Kings County, Diana Villanueva, Kings County D.A., Brooklyn, NY, Diana Villanueva, Kings County D.A., Brooklyn, NY, for Respondent.

### JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied for the reasons stated orally on the record at a hearing in this court at which petitioner was not present by telephone because he refused to make himself available. He was given the opportunity to be present. This memorandum briefly addresses petitioner's claim.

Petitioner was convicted of depraved indifference murder, second degree assault, and second degree criminal possession of a weapon after it was established at trial that he and a companion had fired weapons at four teenagers, killing one and seriously injuring another. Evidence introduced at trial included, *inter alia*, the murder weapon—a gun which was found in the diaper bag of petitioner's infant child—and eyewitness identifications of pe-

### I. AEDPA

■ Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a

set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002).

## II.   Batson

"More than a century ago, the [Supreme] Court decided that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." *Batson v. Kentucky*, 476 U.S. 79, 85, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (citing *Strauder v. West Virginia*, 100 U.S. 303, 10 Otto 303, 25 L.Ed. 664 (1879)). In *Batson*, the Court resolved certain evidentiary problems faced by defendants trying to establish racial discrimination in peremptory strikes. It established a three-step burden-shifting framework for the evidentiary inquiry into whether a peremptory challenge is race-based. First, the party challenging the other party's attempted peremptory strike must make a prima facie case that the nonmoving party's peremptory is based on race. *Batson*, 476 U.S. at 96–97, 106 S.Ct. 1712. Second, the nonmoving party must assert a race-neutral reason for the peremptory challenge. *Id.* at 97–98, 106 S.Ct. 1712. The nonmoving party's burden at step two is very low. Under *Purkett v. Elem*, 514 U.S. 765, 115

S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), although a race-neutral reason must be given, it need not be persuasive or even plausible. *Id.* at 768, 115 S.Ct. 1769. Finally, the court must determine whether the moving party carried the burden of showing by a preponderance of the evidence that the peremptory challenge at issue was based on race. *Batson*, 476 U.S. at 96, 98, 106 S.Ct. 1712.

Throughout the three *Batson* steps, the burden remains with the moving party. "It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett*, 514 U.S. at 768, 115 S.Ct. 1769. Typically, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. Because the evidence on this issue is often vague or ambiguous, the best evidence often will be the demeanor of the attorney who exercises the challenge. Evaluation of the attorney's credibility lies "peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

## III.   Claims

▆▆▆▆  Petitioner first claims that his due process and equal protection rights were violated when the prosecutor used a peremptory challenge on voir dire to exclude a prospective African American juror. In support of this claim, he notes that the prosecution used its peremptory challenges to exclude 8 out of 11 prospective African–American jurors before the particular challenge about which he complains. Specifically, he alleges that the prosecutor's stated reason for striking one juror—that she was "too trusting to evaluate credibility in a trial because she be-

lieved that her children were honest"—was pretextual and incredible on its face. The prosecution, in further explaining its reasons for excluding the juror, stated that "We don't want somebody who believes everything at face value. She may be too trusting." Trial Tr. at 280. The state court found that the explanation was not pretextual. The Appellate Division agreed. The state courts' determination that the explanation was not pretextual is a factual finding that is presumptively correct and must be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Even on the cold record, the prosecutor's explanation is race neutral. The trial court, which was uniquely in a position to evaluate the prosecutor's credibility, was satisfied on that score. Petitioner has not met the threshold to overturn this state court factual determination.

Second, petitioner claims that he was denied a fair trial because the prosecutor stated during summation that petitioner had confessed to the shooting even though no evidence was put on at trial that he had made any statements. The contentious statement by the prosecutor was made in response to a defense argument that petitioner had no motive to shoot the victims:

> We have absolutely no burden to prove motive. You may never know why this case came about. *We have a case [sic] indication based on the word of this defendant, that it was a payback for some sort of street debt that he came back looking for Peter, and it was about some prior beef or dispute or something that Peter had done.* We may never know whether it was words that got this young man so angry on August 20th, 1994, whether it was actions. Something more something less. We really don't know.

Trial Tr. at 884 (emphasis added). Petitioner now claims that the prosecutor was commenting on evidence—petitioner's confessions—that was not admitted at trial.

■ No contemporaneous objection to the prosecution's statements was made, and the Appellate Division therefore deemed the claim procedurally barred. This court thus may not entertain the claim absent a showing of cause for the default, such as ineffective assistance of counsel. Petitioner has not argued cause either before a state court or in his present petition.

■ At any rate, the claim is meritless. In its alternative holding, the Appellate Division correctly noted that the prosecutor was commenting on evidence that *was* in the record—the testimony of two of the teenagers who were shot at—rather than on the confessions that were not in evidence. Those teenagers testified that petitioner approached them, asking for the whereabouts of Peter, the victim and stating that he wanted to find Peter because he "was shooting at my man." Trial Tr. at 327; *see also* Trial Tr. at 449. Review of the record makes it clear that the Appellate Division's factual and legal conclusions were reasonable.

There is no basis for a claim of innocence. The evidence of the state was overwhelming. *See* Brief of the State on Appeal to the Appellate Division, May 5, 1997, Br 4–8.

## IV. Conclusion

The petition for a writ of habeas corpus is denied. No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell*, 537

U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.