DECISION.
{¶ 1} Defendant-appellant Jaaron Richardson appeals his convictions for attempted murder,[1] felonious assault on a police officer,[2]
and carrying a concealed weapon.[3] After a jury found Richardson guilty of the offenses, the trial court sentenced him to a total of ten years in prison.
 {¶ 2} The state, after successfully challenging an African-American juror for cause, used preemptory challenges on two more. Richardson specifically objected to the challenge of one juror. We conclude that, under Batson v. Kentucky,[4] the state failed to offer a plausible race-neutral explanation for striking the potential juror. In fact, the reason given — that as a possible victim of discrimination because of race the juror might favor the defendant — was based on race itself. This is the very evil outlawed by the United States Supreme Court in Batson.
Therefore, we must reverse Richardson's convictions and remand his case for a new trial.
 I. Voir Dire {¶ 3} In Batson v. Kentucky, the United States Supreme Court established a three-step procedure for evaluating claims of racial discrimination in peremptory strikes. First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under the circumstances, the opponent has proved purposeful racial discrimination.[5] A trial court's finding of no discriminatory intent "will not be reversed on appeal absent a determination that it was clearly erroneous."[6]
 {¶ 4} At the start of Richardson's trial, the attorneys conducted voir dire of the potential jurors. The state's attorney had the following exchange with prospective juror Martin:
 {¶ 5} "STATE: Yeah. Looks like you answered `no' to everything else. You never sued anybody?
 {¶ 6} "PROSPECTIVE JUROR MARTIN: Not yet.
 {¶ 7} "STATE: You plan on it? Do you have something going on?
 {¶ 8} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 9} "STATE: Would you tell us a little bit?
 {¶ 10} "PROSPECTIVE JUROR MARTIN: It was discrimination against my employer.
 {¶ 11} "STATE: This is Cinergy Electric?
 {¶ 12} "PROSPECTIVE JUROR MARTIN: Right.
 {¶ 13} "STATE: You still work for them?
 {¶ 14} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 15} "STATE: You had a problem with them?
 {¶ 16} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 17} "STATE: Racial discrimination?
 {¶ 18} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 19} "STATE: Did you come to an understanding about it?
 {¶ 20} "PROSPECTIVE JUROR MARTIN: No. It's going on right now.
 {¶ 21} "STATE: You received some kind of bad treatment?
 {¶ 22} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 23} "STATE: As a result, there's kind of a dispute or some kind of grievance going on?
 {¶ 24} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 25} "STATE: I am sorry to pry into this, but that's what we are doing.
 {¶ 26} "PROSPECTIVE JUROR MARTIN: That's okay.
 {¶ 27} "STATE: Anything else?
 {¶ 28} "PROSPECTIVE JUROR MARTIN: That's all I can think of right now.
 {¶ 29} "STATE: Anybody in your family been charged with a crime or close friends?
 {¶ 30} "PROSPECTIVE JUROR MARTIN: No.
 {¶ 31} "STATE: What about you, sir, please? Just the type you told me?
 {¶ 32} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 33} "STATE: All right. You don't know any police officers?
 {¶ 34} "PROSPECTIVE JUROR MARTIN: (No audible response.)
 {¶ 35} "STATE: Have you ever had any contact with police officers?
 {¶ 36} "PROSPECTIVE JUROR MARTIN: No.
 {¶ 37} "STATE: Maybe nature of this case — Is there anything about this case that would cause you to be uncomfortable?
 {¶ 38} "PROSPECTIVE JUROR MARTIN: No.
 {¶ 39} "STATE: Do you think you can be fair in this case?
 {¶ 40} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 41} "STATE: Be fair to the defendant?
 {¶ 42} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 43} "STATE: Be fair to the State of Ohio?
 {¶ 44} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 45} "STATE: Where do your children go to school?
 {¶ 46} "PROSPECTIVE JUROR MARTIN: One of them — out of school.
 {¶ 47} "STATE: I thought you said they are students?
 {¶ 48} "PROSPECTIVE JUROR MARTIN: Not the 19-year-old stepson, but my biological son goes to school at Aiken.
 {¶ 49} "STATE: You have three sons?
 {¶ 50} "PROSPECTIVE JUROR MARTIN: Yes, I have, but only one lives in the same household that I do.
 {¶ 51} "STATE: Do you have other family here in the Cincinnati area?
 {¶ 52} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 53} "STATE: Are you from here?
 {¶ 54} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 55} "STATE: You went to school here?
 {¶ 56} "PROSPECTIVE JUROR MARTIN: Yes.
 {¶ 57} "STATE: Where did you go to school?
 {¶ 58} "PROSPECTIVE JUROR MARTIN: Woodward High School.
 {¶ 59} "STATE: Thank you. Pass for cause, Judge."
 II. Race-neutral? {¶ 60} The record shows that shortly after the state's peremptory challenge of prospective juror Martin, the following exchange took place at a sidebar:
 {¶ 61} "DEFENDANT'S COUNSEL: I want to make a record that at this time the prosecuting attorney has exercised a peremptory challenge on two jurors, both jurors on which she exercised a peremptory challenge are African-American. At this point, I am making a Batson challenge in exercising of those peremptory challenges. I will also note for the record that one other juror, who was successfully challenged for cause, I did not object to, and that was an Afro-American. I realize that was a challenge-for-cause. But given that it, in effect, is taking three Afro-American potential jurors off the panel. We base our objection on that.
 {¶ 62} "THE COURT: Well, I will entertain your objection. Aren't you a little late on the first peremptory challenge? Should not your objection have been made at the time of the challenge?
 {¶ 63} "DEFENDANT'S COUNSEL: Judge, at that point I did not intend to object; however, the second witness I now feel appropriate. I am specifically objecting to the juror, not the first juror with whom was exercised the peremptory challenge.
 {¶ 64} "THE COURT: You are specifically objecting to juror number 6 [Martin] at this time?
 {¶ 65} "DEFENDANT'S COUNSEL: Correct. I will simply say that the State's previous peremptory challenge gives a cumulative effect of taking an African-American off the jury.
 {¶ 66} "THE COURT: Race neutral.
 {¶ 67} "STATE: I know of — race-neutral reason: He said that he had a dispute with Cincinnati Gas and Electric or Cinergy for racial discrimination; and I feel that will have a very negative effect on my case. I feel like he would be biased specifically in this case since the defendant is black; and of the police officers, one is black officer, but they are white. I think that would have a negative impact on the State's case because he has — that it's not that is race-neutral reasons, I think it would have a negative effect on the State's case.
 {¶ 68} "THE COURT: Anything else?
 {¶ 69} "DEFENDANT'S COUNSEL: I submit that he is employed — any possible, any bias he might have — the city — would apply. He doesn't directly work with the police department.
 {¶ 70} "STATE: Also I would like to point out that still another black juror is on the panel.
 {¶ 71} "THE COURT: That doesn't make a lot of difference. Your objection is overruled."
 III. Clearly Erroneous {¶ 72} To establish a prima facie case of purposeful discrimination under Batson, a defendant must demonstrate (1) that members of a recognized racial group have been peremptorily challenged; and (2) that the facts and circumstances raise an inference that the prosecutor used the peremptory challenge to exclude the jurors on account of their race.[7]
 {¶ 73} In this case, the state exercised peremptory challenges against two black prospective jurors. The Ohio Supreme Court has held that the challenge of only one black prospective juror is sufficient to establish a prima facie case in step one of the Batson analysis.[8] In addition, once the party attempting to strike the juror explains the challenge and the trial court rules on the ultimate issue of discrimination, it becomes moot whether the prima facie case was established.[9]
 {¶ 74} The second step in the Batson procedure is for the state to come forward with a race-neutral explanation for challenging the black jurors. This step of the process "does not demand an explanation that is persuasive, or even plausible."[10] The prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.[11]
But the prosecutor must give a clear and reasonably specific explanation "based on something other than the race of the juror."[12]
 {¶ 75} In this case, the prosecutor stated that the juror would "have a very negative effect on my case" and that "I feel like he would be biased specifically in this case since the defendant is black; and of the police officers, one is black officer, but they are white." The prosecutor then inarticulately admitted that her reasons were not race-neutral, stating "it's not that is race-neutral reasons." She concluded by reiterating, "I think it would have a negative effect on the state's case."
 {¶ 76} In the third step of the Batson analysis, the trial court must determine whether the race-neutral explanation offered by the prosecution is credible or is instead a pretext for unconstitutional discrimination.
 {¶ 77} By the prosecutor's own admission, there was no race-neutral reason to consider in this case. The prosecutor clearly believed that a black person who had believed that he had been a victim of racial discrimination would be biased in a case with a black defendant.
 {¶ 78} In Batson, the Supreme Court stated, "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."[13] The court continued, "[T]he prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption — or his intuitive judgment — that they would be partial to the defendant because of their shared race."[14]
 {¶ 79} Because the state's challenge was based on race itself, the trial court's acceptance of the state's explanation and its denial of Richardson's Batson challenge was clearly erroneous.
 {¶ 80} Therefore, we sustain Richardson's first assignment of error, reverse the trial court's judgment, and remand this case for a new trial. Because of our disposition of Richardson's first assignment of error, his remaining assignments are moot.
Judgment reversed and cause remanded.
Doan, P.J., and Sundermann, J., concur.
[1] R.C. 2923.02(A).
[2] R.C. 2903.11(A)(2).
[3] R.C. 2923.12(A).
[4] See Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712.
[5] See Batson, supra, at 96-98; Purkett v. Elem (1995), 514 U.S. 765,767-768, 115 S.Ct. 1769; State v. White, 85 Ohio St.3d 433, 436,1999-Ohio-281, 709 N.E.2d 140.
[6] See State v. Hernandez (1992), 63 Ohio St.3d 577, 583,589 N.E.2d 1310, citing Hernandez v. New York (1991), 500 U.S. 352, 369,111 S.Ct. 1859.
[7] See State v. Moore, 81 Ohio St.3d 22, 28, 1998-Ohio-441,689 N.E.2d 1.
[8] See State v. White, supra, at 436.
[9] See Hernandez v. New York, supra, at 359; State v. Hernandez,
supra, at 583.
[10] See Purkett, supra, at 768, citing Hernandez v. New York, supra, at 360.
[11] See Batson, supra, at 97.
[12] See Hernandez v. New York, supra, at 360.
[13] See Batson, supra, at 89.
[14] Id. at 97.