# PURKETT, SUPERINTENDENT, FARMINGTON CORRECTIONAL CENTER *v.* ELEM

No. 94–802.   Decided May 15, 1995

PER CURIAM.

Respondent was convicted of second-degree robbery in a Missouri court. During jury selection, he objected to the prosecutor's use of peremptory challenges to strike two black men from the jury panel, an objection arguably based on *Batson* v. *Kentucky*, 476 U. S. 79 (1986). The prosecutor explained his strikes:

> "I struck [juror] number twenty-two because of his long hair. He had long curly hair. He had the longest hair of anybody on the panel by far. He appeared to me to not be a good juror for that fact, the fact that he had long hair hanging down shoulder length, curly, unkempt hair. Also, he had a mustache and a goatee type beard. And juror number twenty-four also has a mustache and goatee type beard. Those are the only two people on the jury . . . with the facial hair . . . . And I don't like the way they looked, with the way the hair is cut, both of them. And the mustaches and the beards look suspicious to me." App. to Pet. for Cert. A–41.

The prosecutor further explained that he feared that juror number 24, who had had a sawed-off shotgun pointed at him during a supermarket robbery, would believe that "to have a robbery you have to have a gun, and there is no gun in this case." *Ibid.*

The state trial court, without explanation, overruled respondent's objection and empaneled the jury. On direct appeal, respondent renewed his *Batson* claim. The Missouri Court of Appeals affirmed, finding that the "state's explanation constituted a legitimate 'hunch'" and that "[t]he circumstances fail[ed] to raise the necessary inference of racial discrimination." *State* v. *Elem*, 747 S. W. 2d 772, 775 (Mo. App. 1988).

Respondent then filed a petition for habeas corpus under 28 U. S. C. § 2254, asserting this and other claims. Adopting the Magistrate Judge's report and recommendation, the Dis-

trict Court concluded that the Missouri courts' determination that there had been no purposeful discrimination was a factual finding entitled to a presumption of correctness under § 2254(d). Since the finding had support in the record, the District Court denied respondent's claim.

The Court of Appeals for the Eighth Circuit reversed and remanded with instructions to grant the writ of habeas corpus. It said:

> "[W]here the prosecution strikes a prospective juror who is a member of the defendant's racial group, solely on the basis of factors which are facially irrelevant to the question of whether that person is qualified to serve as a juror in the particular case, the prosecution must at least articulate some plausible race-neutral reason for believing those factors will somehow affect the person's ability to perform his or her duties as a juror. In the present case, the prosecutor's comments, 'I don't like the way [he] look[s], with the way the hair is cut. . . . And the mustach[e] and the bear[d] look suspicious to me,' do not constitute such legitimate race-neutral reasons for striking juror 22." 25 F. 3d 679, 683 (1994).

It concluded that the "prosecution's explanation for striking juror 22 . . . was pretextual," and that the state trial court had "clearly erred" in finding that striking juror number 22 had not been intentional discrimination. *Id.*, at 684.

Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. *Hernandez* v. *New York*, 500 U. S. 352, 358–359 (1991) (plurality opinion); *id.*, at 375 (O'CONNOR, J., concurring in judgment); *Batson, supra*, at 96–98. The

second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U. S., at 360 (plurality opinion); *id.*, at 374 (O'CONNOR, J., concurring in judgment).

The Court of Appeals erred by combining *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i. e.*, a "plausible" basis for believing that "the person's ability to perform his or her duties as a juror" will be affected. 25 F. 3d, at 683. It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. *Batson, supra,* at 98; *Hernandez, supra,* at 359 (plurality opinion). At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step three is quite different from saying that a trial judge *must terminate* the inquiry at step two when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. Cf. *St. Mary's Honor Center* v. *Hicks*, 509 U. S. 502, 511 (1993).

The Court of Appeals appears to have seized on our admonition in *Batson* that to rebut a prima facie case, the proponent of a strike "must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges," *Batson, supra,* at 98, n. 20 (quoting *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 258 (1981)), and that the reason must be "related to the particular case

to be tried," 476 U. S., at 98. See 25 F. 3d, at 682, 683. This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith. What it means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection. See *Hernandez, supra,* at 359; cf. *Burdine, supra,* at 255 ("The explanation provided must be legally sufficient to justify a judgment for the defendant").

The prosecutor's proffered explanation in this case—that he struck juror number 22 because he had long, unkempt hair, a mustache, and a beard—is race neutral and satisfies the prosecution's step two burden of articulating a nondiscriminatory reason for the strike. "The wearing of beards is not a characteristic that is peculiar to any race." *EEOC* v. *Greyhound Lines, Inc.,* 635 F. 2d 188, 190, n. 3 (CA3 1980). And neither is the growing of long, unkempt hair. Thus, the inquiry properly proceeded to step three, where the state court found that the prosecutor was not motivated by discriminatory intent.

In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are "not fairly supported by the record." 28 U. S. C. § 2254(d)(8). See *Marshall* v. *Lonberger,* 459 U. S. 422, 432 (1983). Here the Court of Appeals did not conclude or even attempt to conclude that the state court's finding of no racial motive was not fairly supported by the record. For its whole focus was upon the *reasonableness* of the asserted nonracial motive (which it thought required by step two) rather than the *genuineness* of the motive. It gave no proper basis for overturning the state court's finding of no racial motive, a finding which turned primarily on an assessment of credibility, see *Batson,* 476 U. S., at 98, n. 21. Cf. *Marshall, supra,* at 434.

Accordingly, respondent's motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are

granted.   The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BREYER joins, dissenting.

In my opinion it is unwise for the Court to announce a law-changing decision without first ordering full briefing and argument on the merits of the case.   The Court does this today when it overrules a portion of our opinion in *Batson* v. *Kentucky,* 476 U. S. 79 (1986).[1]

In *Batson,* the Court held that the Equal Protection Clause of the Fourteenth Amendment forbids a prosecutor to use peremptory challenges to exclude African-Americans from jury service because of their race.   The Court articulated a three-step process for proving such violations. First, a pattern of peremptory challenges of black jurors may establish a prima facie case of discriminatory purpose.   Second, the prosecutor may rebut that prima face case by tendering a race-neutral explanation for the strikes.   Third, the court must decide whether that explanation is pretextual. *Id.,* at 96–98.   At the second step of this inquiry, neither a mere denial of improper motive nor an incredible explanation will suffice to rebut the prima facie showing of discriminatory purpose.   At a minimum, as the Court held in *Batson,* the prosecutor "must articulate a neutral explanation related to the particular case to be tried."   *Id.,* at 98.[2]

---

[1] This is the second time this Term that the Court has misused its summary reversal authority in this way.   See *Duncan* v. *Henry,* 513 U. S. 364, 367 (1995) (STEVENS, J., dissenting).

[2] We explained: "Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.'   *Alexander* v. *Louisiana,* 405 U. S., at 632.   If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.'   *Norris* v. *Alabama,* [294 U. S. 587, 598

Today the Court holds that it did not mean what it said in *Batson*. Moreover, the Court resolves a novel procedural question without even recognizing its importance to the unusual facts of this case.

## I

In the Missouri trial court, the judge rejected the defendant's *Batson* objection to the prosecutor's peremptory challenges of two jurors, juror number 22 and juror number 24, on the ground that the defendant had not made out a prima facie case of discrimination. Accordingly, because the defendant had failed at the first step of the *Batson* inquiry, the judge saw no need even to confirm the defendant's assertion that jurors 22 and 24 were black;[3] nor did the judge require the prosecutor to explain his challenges. The prosecutor nevertheless did volunteer an explanation,[4] but the judge evaluated neither its credibility nor its sufficiency.

---

(1935)]. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson* v. *Kentucky*, 476 U. S., at 97–98 (footnotes omitted).

[3] The following exchange took place between the defense attorney and the trial judge:

"MR. GOULET: Mr. Larner stated that the reason he struck was because of facial hair and long hair as prejudicial. Number twenty-four, Mr. William Hunt, was a victim in a robbery and he stated that he could give a fair and impartial hearing. To make this a proper record if the Court would like to call up these two individuals to ask them if they are black or will the Court take judicial notice that they are black individuals?

"THE COURT: I am not going to do that, no, sir." App. to Pet. for Cert. A–42.

[4] The prosecutor stated:

"I struck number twenty-two because of his long hair. He had long curly hair. He had the longest hair of anybody on the panel by far. He appeared to me to not be a good juror for that fact, the fact that he had long hair hanging down shoulder length, curly, unkempt hair. Also, he had a mustache and a goatee type beard. And juror number twenty-four also has a mustache and a goatee type beard. Those are the only two people on the jury, numbers twenty-two and twenty-four with facial hair of any

The Missouri Court of Appeals affirmed, relying partly on the ground that the use of one-third of the prosecutor's peremptories to strike black veniremen did not require an explanation, *State* v. *Elem,* 747 S. W. 2d 772, 774 (1988), and partly on the ground that if any rebuttal was necessary then the volunteered "explanation constituted a legitimate 'hunch,'" *id.,* at 775. The court thus relied, alternatively, on steps one and two of the *Batson* analysis without reaching the question whether the prosecutor's explanation might have been pretextual under step three.

The Federal District Court accepted a Magistrate's recommendation to deny petitioner's petition for habeas corpus without conducting a hearing. The Magistrate had reasoned that state-court findings on the issue of purposeful discrimination are entitled to deference. App. to Pet. for Cert. A–27. Even though the trial court had made no such findings, the Magistrate treated the statement by the Missouri Court of Appeals that the prosecutor's reasons "constituted a legitimate 'hunch'" as a finding of fact that was supported by the record.[5] When the case reached the United States Court of Appeals for the Eighth Circuit, the parties apparently assumed that petitioner had satisfied the first step of the *Batson* analysis.[6] The disputed issue in the Court of

---

kind of all the men and, of course, the women, those are the only two with the facial hair. And I don't like the way they looked, with the way the hair is cut, both of them. And the mustaches and the beards look suspicious to me. And number twenty-four had been in a robbery in a supermarket with a sawed-off shotgun pointed at his face, and I didn't want him on the jury as this case does not involve a shotgun, and maybe he would feel to have a robbery you have to have a gun, and there is no gun in this case." *Id.,* at A–41.

[5] The Magistrate stated: "The Court of Appeals determined that the prosecutor's reasons for striking the men constituted a legitimate 'hunch' . . . . The record supports the Missouri Court of Appeals' finding of no purposeful discrimination." *Id.,* at A–27.

[6] In this Court, at least, the State does not deny that the prosecutor's pattern of challenges established a prima facie case of discrimination.

Appeals was whether the trial judge's contrary finding was academic because the prosecutor's volunteered statement satisfied step two and had not been refuted in step three.

The Court of Appeals agreed with the State that excluding juror 24 was not error because the prosecutor's concern about that juror's status as a former victim of a robbery was related to the case at hand. 25 F. 3d 679, 681, 682 (1994). The court did, however, find a *Batson* violation with respect to juror 22. In rejecting the prosecutor's "race-neutral" explanation for the strike, the Court of Appeals faithfully applied the standard that we articulated in *Batson:* The explanation was not "*'related to the particular case to be tried.'*" 25 F. 3d, at 683, quoting 476 U. S., at 98 (emphasis in Court of Appeals opinion).

Before applying the *Batson* test, the Court of Appeals noted that its analysis was consistent with both the Missouri Supreme Court's interpretation of *Batson* in *State* v. *Antwine,* 743 S. W. 2d 51 (1987) (en banc), and this Court's intervening opinion in *Hernandez* v. *New York,* 500 U. S. 352 (1991). 25 F. 3d, at 683. Referring to the second stage of the three-step analysis, the *Antwine* court had observed:

> "We do not believe, however, that *Batson* is satisfied by 'neutral explanations' which are no more than facially legitimate, reasonably specific and clear. Were facially neutral explanations sufficient without more, *Batson* would be meaningless. It would take little effort for prosecutors who are of such a mind to adopt rote 'neutral explanations' which bear facial legitimacy but conceal a discriminatory motive. We do not believe the Supreme Court intended a charade when it announced *Batson.*" 743 S. W. 2d, at 65.

In *Hernandez,* this Court rejected a *Batson* claim stemming from a prosecutor's strikes of two Spanish-speaking Latino jurors. The prosecutor explained that he struck the jurors because he feared that they might not accept an inter-

preter's English translation of trial testimony given in Spanish. Because the prosecutor's explanation was directly related to the particular case to be tried, it satisfied the second prong of the *Batson* standard. Moreover, as the Court of Appeals noted, 25 F. 3d, at 683, the plurality opinion in *Hernandez* expressly observed that striking all venirepersons who speak a given language, "without regard to the particular circumstances of the trial," might constitute a pretext for racial discrimination. 500 U. S., at 371–372 (opinion of KENNEDY, J.).[7] Based on our precedent, the Court of Appeals was entirely correct to conclude that the peremptory strike of juror 22 violated *Batson* because the reason given was unrelated to the circumstances of the trial.[8]

---

[7] True, the plurality opinion in *Hernandez* stated that explanations unrelated to the particular circumstances of the trial "may be found by the trial judge to be a pretext for racial discrimination," 500 U. S., at 372, and thus it specifically referred to the third step in the *Batson* v. *Kentucky*, 476 U. S. 79 (1986), analysis. Nevertheless, if this comment was intended to modify the *Batson* standard for determining the sufficiency of the prosecutor's response to a prima facie case, it was certainly an obtuse method of changing the law.

[8] In my opinion, it is disrespectful to the conscientious judges on the Court of Appeals who faithfully applied an unambiguous standard articulated in one of our opinions to say that they appear "to have seized on our admonition in *Batson* . . . that the reason must be 'related to the particular case to be tried,' 476 U. S., at 98." *Ante*, at 768–769. Of course, they "seized on" that point because *we told them to.* The Court of Appeals was following *Batson*'s clear mandate. To criticize those judges for doing their jobs is singularly inappropriate.

The Court of Appeals for the Eighth Circuit is not the only court to have taken our admonition in *Batson* seriously. Numerous courts have acted on the assumption that we meant what we said when we required the prosecutor's neutral explanation to be "related to the particular case to be tried." See, *e. g., Jones* v. *Ryan,* 987 F. 2d 960, 974 (CA3 1993); *Ex parte Bird,* 594 So. 2d 676, 682–683 (Ala. 1991); *State* v. *Henderson,* 112 Ore. App. 451, 456, 829 P. 2d 1025, 1028 (1992); *Whitsey* v. *State,* 796 S. W. 2d 707, 713–716 (Tex. Crim. App. 1989); *Jackson* v. *Commonwealth,* 8 Va. App. 176, 186–187, 380 S. E. 2d 1, 6–7 (1989); *State* v. *Butler,* 731 S. W. 2d

Today, without argument, the Court replaces the *Batson* standard with the surprising announcement that any neutral explanation, no matter how "implausible or fantastic," *ante,* at 768, even if it is "silly or superstitious," *ibid.,* is sufficient to rebut a prima facie case of discrimination. A trial court must accept that neutral explanation unless a separate "step three" inquiry leads to the conclusion that the peremptory challenge was racially motivated. The Court does not attempt to explain why a statement that "the juror had a beard," or "the juror's last name began with the letter 'S'" should satisfy step two, though a statement that "I had a hunch" should not. See *ante,* at 769; *Batson,* 476 U. S., at 98. It is not too much to ask that a prosecutor's explanation for his strikes be race neutral, reasonably specific, *and* trial related. Nothing less will serve to rebut the inference of race-based discrimination that arises when the defendant has made out a prima facie case. Cf. *Texas Dept. of Community Affairs* v. *Burdine,* 450 U. S. 248, 253 (1981). That, in any event, is what we decided in *Batson.*

## II

The Court's peremptory disposition of this case overlooks a tricky procedural problem. Ordinarily, a federal appeals court reviewing a claim of *Batson* error in a habeas corpus proceeding must evaluate, with appropriate deference, the factual findings and legal conclusions of the state trial court. But in this case, the only finding the trial judge made was that the defendant had failed to establish a prima facie case. Everyone now agrees that finding was incorrect. The state trial judge, holding that the defendant had failed at step one,

265, 271 (Mo. App. 1987); *Slappy* v. *State,* 503 So. 2d 350, 355 (Fla. App. 1987); *Walker* v. *State,* 611 So. 2d 1133, 1142 (Ala. Crim. App. 1992); *Huntley* v. *State,* 627 So. 2d 1011, 1012 (Ala. Crim. App. 1991). This Court today calls into question the reasoning of all of these decisions without even the courtesy of briefing and argument.

made no finding with respect to the sufficiency or credibility of the prosecutor's explanation at step two. The question, then, is whether the reviewing court should (1) go on to decide the second step of the *Batson* inquiry, (2) reverse and remand to the District Court for further proceedings, or (3) grant the writ conditioned on a proper step-two and (if necessary) step-three hearing in the state trial court. This Court's opinion today implicitly ratifies the Court of Appeals' decision to evaluate on its own whether the prosecutor had satisfied step two. I think that is the correct resolution of this procedural question, but it deserves more consideration than the Court has provided.

In many cases, a state trial court or a federal district court will be in a better position to evaluate the facts surrounding peremptory strikes than a federal appeals court. But I would favor a rule giving the appeals court discretion, based on the sufficiency of the record, to evaluate a prosecutor's explanation of his strikes. In this case, I think review is justified because the prosecutor volunteered reasons for the challenges. The Court of Appeals reasonably assumed that these were the same reasons the prosecutor would have given had the trial court required him to respond to the prima facie case. The Court of Appeals, in its discretion, could thus evaluate the explanations for their sufficiency. This presents a pure legal question, and nothing is gained by remand if the appeals court can resolve that question on the facts before it.

Assuming the Court of Appeals did not err in reaching step two, a new problem arises when that court (or, as in today's case, this Court) conducts the step-two inquiry and decides that the prosecutor's explanation was sufficient. Who may evaluate whether the prosecutor's explanation was pretextual under step three of *Batson?* Again, I think the question whether the Court of Appeals decides, or whether it refers the question to a trial court, should depend on the state of the record before the Court of Appeals. Whatever

procedure is contemplated, however, I think even this Court would acknowledge that some implausible, fantastic, and silly explanations could be found to be pretextual without any further evidence. Indeed, in *Hernandez* the Court explained that a trial judge could find pretext based on nothing more than a consistent policy of excluding all Spanish-speaking jurors if that characteristic was entirely unrelated to the case to be tried. 500 U. S., at 371–372 (plurality opinion of KENNEDY, J.). Parallel reasoning would justify a finding of pretext based on a policy of excusing jurors with beards if beards have nothing to do with the pending case.

In some cases, conceivably the length and unkempt character of a juror's hair and goatee type beard might give rise to a concern that he is a nonconformist who might not be a good juror. In this case, however, the prosecutor did not identify any such concern. He merely said he did not " 'like the way [the juror] looked,' " that the facial hair " 'look[ed] suspicious.' " *Ante,* at 766. I think this explanation may well be pretextual as a matter of law; it has nothing to do with the case at hand, and it is just as evasive as "I had a hunch." Unless a reviewing court may evaluate such explanations when a trial judge fails to find that a prima facie case has been established, appellate or collateral review of *Batson* claims will amount to nothing more than the meaningless charade that the Missouri Supreme Court correctly understood *Batson* to disfavor. *Antwine,* 743 S. W. 2d, at 65.

In my opinion, preoccupation with the niceties of a three-step analysis should not foreclose meaningful judicial review of prosecutorial explanations that are entirely unrelated to the case to be tried. I would adhere to the *Batson* rule that such an explanation does not satisfy step two. Alternatively, I would hold that, in the absence of an explicit trial court finding on the issue, a reviewing court may hold that such an explanation is pretextual as a matter of law. The Court's unnecessary tolerance of silly, fantastic, and implausible explanations, together with its assumption that there is

a difference of constitutional magnitude between a statement that "I had a hunch about this juror based on his appearance," and "I challenged this juror because he had a mustache," demeans the importance of the values vindicated by our decision in *Batson*.

I respectfully dissent.