669 S.E.2d 333

**Lakefhia McCREA, Petitioner,**

v.

**Jafer GHERAIBEH, Respondent.**

**No. 26557.**

Supreme Court of South Carolina.

Heard May 29, 2008.
Decided Oct. 27, 2008.
Rehearing Denied Dec. 16, 2008.

Edward L. Graham, of Graham Law Firm, of Florence, for Petitioner.

C. Anthony Harris, Jr., of Harris McLeod & Ruffner, of Cheraw, for Respondent.

Chief Justice TOAL:

In this case, the trial court denied Petitioner's *Batson* motion finding that Respondent's counsel's exercise of a peremptory strike based on a juror's display of dreadlocks was not racially motivated. The court of appeals affirmed the trial court's decision and this Court granted certiorari. We reverse the decision of the court of appeals upholding the denial of Petitioner's *Batson* motion and remand the case for a new trial.

### FACTUAL/PROCEDURAL BACKGROUND

Petitioner Lakhefia McCrea brought suit seeking compensation for bodily injuries and vehicular damage sustained in an automobile accident in which Respondent Jafer Gheraibeh was the at-fault driver. Following Respondent's strike of three of six potential African–American jurors during jury selection, Petitioner moved for a hearing pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),

arguing that Respondent's strikes of the African–American jurors were racially motivated and therefore impermissible.

At the *Batson* hearing, the trial court asked Respondent his reason for striking a particular African–American juror. Respondent's counsel explained:

Your Honor, I had some uneasiness about [this particular juror]. He was—I of course have to look at jurors in light of how I think they're going to judge my client as well. I had some uneasiness about him. I don't know if Your Honor recalls or not. He has—he's about the only member of the jury I see out there with very long dreadlocks. That gave me some concern in light of how he may react toward my client. It was—as Your Honor knows, sometimes in selecting a juror there's a sense or—or in deciding whether or not to strike someone there's necessarily a sense of a feel about a juror and—and that gave me some pause . . . was his appearance including—including the dreadlocks.

After hearing counsel's explanation for striking the other two African–American jurors, Petitioner indicated that her main concern was the strike of the juror with dreadlocks.[1] Specifically, Petitioner argued that Respondent's counsel's "uneasiness" over the display of dreadlocks was not a sufficient basis to exercise a discretionary strike, and that when considered along with Respondent's strike of two other African–American jurors, counsel's "uneasiness" over the juror's dreadlocks amounted to pretext.

The trial judge explained that in ruling on Petitioner's *Batson* motion, he had to evaluate the credibility of the attorneys. Stating that he knew both of the attorneys and was aware of their reputations in the community, the trial judge concluded that while some attorneys he knew might be inclined to exercise a racially-motivated jury strike, he did not believe that Respondent's attorney would engage in such conduct.

The jury returned a verdict in favor of Petitioner for $5,985 in personal injury damages and $5,000 in property damages.

---

1. Respondent's counsel explained that the two additional prospective African–American jurors were struck on the respective bases of (1) being retired, and (2) having a criminal domestic violence charge, although the juror was later found not guilty.

The trial court denied Petitioner's post-trial motions for judgment notwithstanding the verdict, a new trial absolute, and a new trial *nisi additur*, and entered judgment on Petitioner's behalf for $6,887.25 after reducing the verdict amount by $4,097.75 for the amount Respondent had previously paid.

Petitioner appealed on multiple grounds and the court of appeals affirmed the trial court's decision. *McCrea v. Gheraibeh*, Op. No.2006–UP–072 (S.C. Ct.App. filed Feb. 2, 2006). Regarding the trial court's denial of Petitioner's *Batson* motion, the court of appeals held that counsel's concern regarding the juror's appearance and his dreadlocks was a racially-neutral explanation for the strike. Id. The court further reasoned that the decision to wear an alternative hairstyle is not specific to any race, and therefore, no discriminatory intent was inherent in counsel's explanation. Id.

This Court granted certiorari to review the decision of the court of appeals and Petitioner raises the following issue for review:

> Did the court of appeals err in affirming the trial court's denial of Petitioner's *Batson* motion?

### LAW/ANALYSIS

Petitioner argues that the trial court erred in denying her *Batson* motion because Respondent's peremptory strike of a juror for wearing dreadlocks was racially motivated. We agree.

■■■ The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venire person on the basis of race or gender. *State v. Shuler*, 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001). Following the United States Supreme Court's decision in *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), this Court clarified the three-step method for executing a *Batson* hearing in *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996). Under the method articulated in Adams, a trial court must hold a *Batson* hearing when members of a cognizable racial group or gender are struck and the opposing party requests a hearing. 322 S.C. at 124, 470 S.E.2d at 372. At the hearing, the proponent of the strike must offer a facially race-neutral explanation for the strike. Then, in a final step, the

burden shifts to the party challenging the strike to show that the explanation is mere pretext. *Id.*

In modifying this Court's previous brand of *Batson* analysis, Adams emphasized the lack of any requirement for counsel to present a reasonably specific, legitimate explanation for making the strike in the second step of the analysis. Id. at 123, 470 S.E.2d at 371. Rather, following the lead of *Purkett,* this Court declared that the second step of a *Batson* inquiry only required that counsel's explanation be race-neutral in order to ensure that the burden of showing purposeful discrimination remains at all times on the opponent of the strike. Id. at 124, 470 S.E.2d at 372.

■ While we recognize the importance of properly allocating the burden of proof in a *Batson* inquiry, in our view, counsel's explanation that he struck the particular juror based simply on counsel's "uneasiness" over the juror's dreadlocks was not a race-neutral reason for exercising a peremptory strike. Regardless of their gradual infiltration into mainstream American society, dreadlocks retain their roots as a religious and social symbol of historically black cultures.[2] For this reason, we hold that counsel's explanation that the juror's dreadlocks caused him "uneasiness" was insufficient to satisfy the race-neutral requirement in the second step of the trial court's *Batson* analysis. *See also Payton v. Kearse,* 329 S.C. 51, 56, 495 S.E.2d 205, 208 (1998) (holding that basing a peremptory strike on a characterization of the juror as a "redneck" is facially discriminatory in violation of *Batson* ).

By proceeding with a pretext inquiry under *Batson* without first eliciting a race-neutral reason for the strike from Respondent's counsel, and ultimately dismissing Petitioner's *Batson* motion based solely on the reputation of counsel making the

---

**2.** For this reason, we would distinguish *Purkett,* which determined that the exercise of a peremptory strike because a juror's "long, unkempt hair" looked "suspicious" was constitutionally permissible. While we agree that the growing of long, unkempt hair is not associated with any race, we find that counsel's specific reference to the juror's hair as "dreadlocks" in conjunction with an otherwise vague explanation for the strike, carries with it an inherently discriminatory intent. *See Purkett,* 514 U.S. at 768, 115 S.Ct. 1769 (deeming an explanation for a strike race-neutral "[u]nless a discriminatory intent is inherent in the prosecutor's explanation").

strike, we find that the trial court bypassed an evidentiary requirement that goes to the very heart of a *Batson* inquiry.[3] For this reason, we hold that the trial court erred in denying Petitioner's *Batson* motion.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals affirming the trial court's denial of Petitioner's *Batson* motion and remand the case for a new trial.

BEATTY, J., and Acting Justice J. MICHELLE CHILDS, concur.

MOORE, J., dissenting in a separate opinion in which PLEICONES, J., concurs.

Justice MOORE:

I respectfully dissent. I would affirm the trial court's ruling that petitioner failed to meet her burden of showing that trial counsel's reason for striking the juror was pretextual.

The Equal Protection Clause of the Fourteenth Amendment to the Constitution prohibits the striking of a venire person on the basis of race or gender. *State v. Evins*, 373 S.C. 404, 645 S.E.2d 904 (2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 662, 169 L.Ed.2d 521 (2007). The proper procedure for a *Batson* hearing is set forth in *Evins*, at 415, 645 S.E.2d at 909. After a party objects to a jury strike, the proponent of the strike must offer a facially race-neutral explanation. Id. Once the proponent states a reason that is race-neutral, the burden is on the party challenging the strike to show the explanation is mere pretext, either by showing similarly situated members of another race were seated on the jury or that the reason given for the strike is so fundamentally implausible as to constitute mere pretext despite a lack of disparate treatment. Id. The burden of persuading the court that a *Batson* violation has occurred remains at all times on the opponent of the strike. Id.

---

**3.** In this same way, we believe that the dissent's analysis improperly focuses on the issue of pretext in the third step of *Batson* when the real issue, in our view, is Respondent's counsel's failure to first meet the requirement of race-neutrality in the second step of *Batson*.

Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record. *State v. Shuler,* 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001), *cert. denied,* 534 U.S. 977, 122 S.Ct. 404, 151 L.Ed.2d 306 (2001). Typically, the decisive question is whether the attorney's race-neutral explanation for a peremptory challenge should be believed. *Evins,* at 415–416, 645 S.E.2d at 909. There is seldom much evidence in the record bearing on the issue, and the trial court's findings regarding purposeful discrimination necessarily will rest largely on the evaluation of demeanor and credibility of counsel. Id. Often the demeanor of the challenged attorney will be the best and only evidence of discrimination, and evaluation of the attorney's mind lies peculiarly within a trial judge's province. *Shuler,* at 615, 545 S.E.2d at 810 (citing *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Therefore, those findings are given great deference and will not be set aside unless clearly erroneous. *Evins,* at 416, 645 S.E.2d at 910.

In my opinion, the court of appeals correctly found that respondent's reason for striking the juror was race-neutral pursuant to *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). In *Purkett,* the United States Supreme Court found that a prosecutor's explanation for striking an African–American juror was race-neutral where the prosecutor explained that he struck the juror because he had "long, unkempt hair, a mustache, and a beard." The prosecutor had further explained that he did not "like the way [the juror] looked," and that the mustache and beard looked suspicious to him. Thus, the United States Supreme Court approved the challenge of a prospective African–American juror solely on the basis of his appearance. The United States Supreme Court noted that the growing of long, unkempt hair is not peculiar to any race. Id. at 769, 115 S.Ct. 1769.

Furthermore, I believe that the court of appeals properly noted that the decision to wear an alternative hairstyle is not specific to any race. *See Hastings v. Cambra,* 2000 WL 307473 (N.D.Cal.2000) (finding that striking a proposed African–American juror because he had dreadlocks is a reasonable and race-neutral reason for the strike); *State v. Bolton,* 274 Kan. 1, 49 P.3d 468 (2002) (upholding the trial court's decision

finding no purposeful discrimination for striking a prospective African–American juror who wore hair braids). Just as the United States Supreme Court similarly noted in *Purkett*, the decision to wear one's hair in the dreadlocks hairstyle is not peculiar to any race. In other cultures and more often in the past, the hairstyle has been worn as a religious choice by, for example, Hindus and Rastafarians, and is unrelated to race. In recent years, the wearing of the dreadlocks hairstyle has been practiced by both African–Americans and Caucasians, but more often by African–Americans. I would find that the choice to wear dreadlocks is a choice to wear an alternative hairstyle and is not limited to one particular race and that the trial judge therefore appropriately determined respondent's reason for striking the juror was race-neutral. *See Purkett* at 769, 115 S.Ct. 1769 (a legitimate reason for exercising a challenge is not a reason that makes sense but a reason that does not deny equal protection).

In the instant case, after finding the reason for the strike was race-neutral, the trial judge then properly proceeded to determine whether petitioner could meet the burden of showing the explanation was actually mere pretext. Petitioner argued that having dreadlocks and making respondent's attorney uneasy was not a sufficient basis for a discretionary strike. The judge found that, based on his evaluation of respondent's attorney's reputation and credibility, petitioner had not met her burden of showing pretext. In my view, petitioner's cursory argument, without more, does not meet her burden of showing that the reason given for the strike was so fundamentally implausible as to constitute mere pretext, and thus, because the trial court's finding is not clearly erroneous, it may not be set aside. *See Evins*, at 416, 645 S.E.2d at 909 (demeanor of the challenged attorney will be the best and only evidence of discrimination, and the evaluation of the attorney's mind lies peculiarly within a trial judge's provide; therefore, this finding is given great deference and will not be set aside unless clearly erroneous); *Shuler*, at 615, 545 S.E.2d at 810 (same).

For these reasons, I would affirm the Court of Appeals' decision upholding the trial court's ruling.

PLEICONES, J., concurs.