288 S.W.3d 312 (2009)
STATE of Missouri, Respondent,
v.
Everett L. WASHINGTON, Appellant.
No. ED 91668.
Missouri Court of Appeals, Eastern District, Division One.
June 2, 2009.
Motion for Rehearing and/or Transfer to Supreme Court Denied July 23, 2009.
*313 Mark Dean, Chesterfield, MO, for Appellant.
Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.
KURT S. ODENWALD, Presiding Judge.

Introduction
Everett Washington (Defendant) appeals from the Judgment entered by the Circuit Court of the City of St. Louis, following a jury trial, convicting him of one count of second-degree robbery, in violation of Section 569.030, RSMo 2000.[1] Defendant was sentenced as a prior felony offender to twelve years of incarceration. We affirm the trial court's Judgment and find the trial court did not err in denying Defendant's Batson[2] challenge.

Background
Defendant was indicted as a prior felony offender on one count of robbery in the first degree, in violation of Section 569.020, and one count of armed criminal action, in violation of Section 571.015, resulting from an incident on August 18, 2006.[3]
Defendant was tried by a jury on June 2 and 3, 2008. During jury selection Defendant raised a Batson challenge to the State's peremptory strikes, stating that all of the State's six strikes, other than the alternate, were African-American. After providing an explanation for the first five strikes and the alternate, the prosecutor stated with regard to venireperson Mays (Mays) that, "[Mays] has his hair in a very unique design of  I'm not sure if it's called dreadlocks or  but it is a very precise and very individualistic hairstyle, and I would prefer not to have somebody who is individualistic on the jury." The trial court *314 found that the explanations provided by the State were race-neutral. The trial court then asked Defense Counsel if he had anything further, to which Defense Counsel responded that he did not.
The jury found Defendant not guilty on the charges of armed criminal action and robbery in the first degree, though guilty of the lesser-included offense of robbery in the second degree. Having previously found that Defendant was a prior felony offender, the trial court entered its Judgment in accordance with the jury's verdict. Defendant was sentenced on July 10, 2008, to twelve years of incarceration.
On July 17, 2008, Defendant filed his Notice of Appeal with this Court. This appeal follows.

Points on Appeal
Defendant alleges the trial court erred in denying his challenge of the State's peremptory strike of venireperson Mays, in violation of Defendant's right to equal protection, because the reasons given by the State in striking Mays were inherently discriminatory.

Standard of Review
In reviewing a trial court's decision relating to a Batson challenge, the trial court is accorded great deference because its findings of fact largely depend on its evaluation of credibility and demeanor. Kesler-Ferguson v. Hy-Vee, 271 S.W.3d 556, 558 (Mo. banc 2008). This Court will then review the trial court's ruling on a Batson challenge for clear error, meaning the trial court's findings will be set aside only if we are left with the definite and firm impression that a mistake has been made. State v. McFadden (McFadden II), 216 S.W.3d 673, 675 (Mo. banc 2007).
However, on appeal a litigant is not permitted to broaden the objection presented to the trial court and is not permitted to rely on a different theory than offered at trial. State v. Clark, 280 S.W.3d 625, 628-29 (Mo.App.W.D.2008). Here, although Defendant raised an initial objection to the State's peremptory strike of venireperson Mays under Batson, Defendant did not challenge the State's proffered reason for striking Mays, either on grounds that the explanation was not race-neutral or the explanation was merely a pretext for racial discrimination. Defendant failed to raise at trial the arguments he now presents on appeal, and requests this Court to review those arguments for plain error under Rule 30.20.
Plain error review is a two-step process. Id. First, we must "determine whether the claim of plain error, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." Id. An error is deemed "plain error" where it is evident, obvious, and clear. Id. "If evident, obvious, and clear error is found on the face of the claim, the appellate court has discretion to determine whether manifest injustice or a miscarriage of justice resulted therefrom." Id.

Discussion
Defendant claims the trial court erred in denying his Batson challenge because the State's peremptory strike of Mays due to Mays's "very precise and very individualistic hairstyle" was impermissible racial discrimination.
The United States Supreme Court held in Batson that the equal protection clause guarantees a defendant that venirepersons will not be excluded from the jury venire on account of race. 476 U.S. at 86, 106 S.Ct. 1712. The Supreme Court reasoned that "[p]urposeful racial discrimination in selection of the venire violates a *315 defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Id. at 86, 106 S.Ct. 1712. As such, the equal protection clause forbids a prosecutor from challenging a potential juror solely on account of the juror's race or on the assumption that African-American jurors, as a group, would be unable to impartially consider the State's case against an African-American defendant. Id. at 89, 106 S.Ct. 1712.
In Batson, the Supreme Court outlined a three-step process for evaluating a claim that a prosecutor has used a peremptory challenge in a manner that violates the equal protection clause. Hernandez v. New York, 500 U.S. 352, 358, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). First, a defendant, or opponent of a peremptory challenge, must make out a prima facie case of racial discrimination by raising a Batson challenge. Kesler-Ferguson, 271 S.W.3d at 559, quoting Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Second, the burden then shifts to the State, or proponent of the strike, to come forward with a race-neutral explanation for striking the venireperson, which must be something more than simply a denial of a discriminatory purpose. Id.; McFadden II, 216 S.W.3d at 675. The State's explanation need only be facially race-neutral and is presumed so unless discriminatory intent is inherent within the explanation. State v. Williams, 97 S.W.3d 462, 471 (Mo. banc 2003); State v. Readman, 261 S.W.3d 697, 700 (Mo.App. W.D.2008). Third, assuming the State articulates an acceptable race-neutral explanation, the burden is then on the defendant, or opponent of the strike, to show the State's explanation was merely pretextual, and that, in fact, the strike was motivated by racial discrimination. Williams, 97 S.W.3d at 471; State v. Johnson, 220 S.W.3d 377, 383 (Mo.App. E.D.2007). The trial court's primary concern in evaluating a Batson challenge is the "plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." State v. McFadden (McFadden I), 191 S.W.3d 648, 651 (Mo. banc 2006), quoting State v. Parker, 836 S.W.2d 930, 933 (Mo. banc 1992).
Here, Defendant's timely objection to the State's use of a peremptory strike to remove Mays satisfies the first step of our inquiry into a Batson challenge. Defendant noted that he was raising a "Batson challenge" and identified the cognizable protected group to which the venireperson belonged. State v. Barnett, 980 S.W.2d 297, 302 (Mo. banc 1998). The record shows that Defendant identified each of the venirepersons struck by the State, other than the alternate, as African-American, including Mays.
Proceeding to the second step of our inquiry of Defendant's Batson challenge, the prosecutor responded that he used a peremptory strike on venireperson Mays because "[Mays] has his hair in a very unique design of  I'm not sure if it's called dreadlocks or  but it is a very precise and very individualistic hairstyle, and I would prefer not to have somebody who is individualistic on the jury." After the trial court ruled the proffered explanation was race-neutral, Defendant did not challenge or further object that the proffered reason was not race-neutral or that the explanation was merely pretext for racial discrimination. Even when specifically asked by the trial court if he had anything else on behalf of Defendant, Defense Counsel responded, "No, Your Honor." Defendant now claims on appeal that the trial court erred when it denied Defendant's Batson challenge because the State did not proffer a "race-neutral" explanation for the strike of Mays as required by the second step of *316 the Batson inquiry. Defendant argues that the reason offered by the State for striking venireperson Mays was inherently racially discriminatory and required the trial court to uphold the Batson challenge without proceeding to the third step of the inquiry. We disagree and find that the trial court properly found that the State's proffered reason for striking Mays was race-neutral, and did not err in rejecting Defendant's Batson challenge.
Critical to our analysis is the fact that a "race-neutral explanation" in the context of a Batson challenge simply means "an explanation based on something other than the race of the juror." Hernandez, 500 U.S. at 360, 111 S.Ct. 1859. The second step of the Batson challenge process does not require an explanation that is persuasive, or even plausible. Purkett, 514 U.S. at 768, 115 S.Ct. 1769. The issue is simply the facial validity of the prosecutor's explanation and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Id.; Hernandez, 500 U.S. at 360, 111 S.Ct. 1859. Even if a prosecutor's criterion might result in the disproportionate removal of a certain racial group, the disproportionate impact does not turn a prosecutor's actions into a per se violation of the equal protection clause. Hernandez, 500 U.S. at 361, 111 S.Ct. 1859. Furthermore, while "disparate impact should be given appropriate weight in determining whether the prosecutor acted with a forbidden intent, [] it will not be conclusive in the preliminary race-neutrality step of the Batson inquiry." Id. at 362, 111 S.Ct. 1859.
In this case, the prosecutor explained his peremptory strike of venireperson Mays by pointing out Mays's "very precise and very individualistic hairstyle" and noting that he would "prefer not to have somebody who is individualistic on the jury." We find the State met its burden with this explanation in providing a race-neutral reason for striking Mays.[4] On appeal, Defendant now suggests the prosecutor's reference to "dreadlocks" as a reason for striking Mays renders the prosecutor's reason for exercising the peremptory strike inherently discriminatory. However, as noted by the record, the prosecutor explained that Mays's hairstyle caused him concern because he did not want someone who is "individualistic" on the jury. We do not view this comment or explanation as necessarily or inherently discriminatory against African-American persons because this explanation could have applied equally to any venireperson having a distinctive tattoo, a Mohawk hairstyle, body piercing, or other "individualistic" traits, making the venireperson less than desirable for the State.[5] Furthermore, we note that Defendant *317 never argued before the trial court that the State's explanation was not race-neutral. Defendant failed to the allow the trial court an opportunity to consider and examine any concerns that Defendant may have harbored that the explanation offered by the State was not race-neutral, but instead was inherently racially discriminatory. Defendant provides this Court with no record which could support a claim that the State's proffered reason for striking Mays was anything other than race-neutral. "A defendant's failure to challenge the State's race-neutral explanation in any way waives any future complaint that the State's reasons were racially motivated, and leaves nothing for this Court to review." State v. Taylor, 944 S.W.2d 925, 934 (Mo. banc 1997). Thus, we agree with the trial court that the State provided a race-neutral explanation sufficient to satisfy the second step of a Batson challenge.
Once the State produces a facially valid explanation, it will be deemed race-neutral and the defendant then has the burden to show that the State's proffered reason was a mere pretext for purposeful discrimination. Clark, 280 S.W.3d at 631-32. Upon a finding that the trial court did not err in ruling the State's proffered reason for striking Mays was race-neutral, we examine this third step of the Batson challenge inquiry, i.e., we consider the issue of pretext. However, Defendant did not argue before the trial court that the State's proffered explanation was merely a pretext for racial discrimination. Defendant made no attempt to satisfy the requirement of the third step of evaluating a Batson challenge. Appellate courts have refused to review arguments that an explanation for a *318 juror strike was pretextual when raised for the first time on appeal. See Clark, 280 S.W.3d at 631-32; Johnson, 220 S.W.3d at 383. Here, the record contains no evidence or even any argument by Defendant that the State's proffered explanation was a pretext for improper discrimination. The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from the opponent of the stricken. Purkett, 514 U.S. at 769, 115 S.Ct. 1769. When the State offered its explanation, citing Defendant's hairstyle and perceived individuality, Defendant raised no objection or offered any evidence indicating that the State's reason was not race-neutral, or was merely pretext for racial discrimination. Defendant's failure to raise any objection or challenge to the State's proffered explanation leaves nothing for this Court to review. Defendant's point is denied.

Conclusion
Defendant has not demonstrated an evident, obvious, and clear error, nor has he shown manifest injustice or a miscarriage of justice. The judgment of the trial court is affirmed.
GLENN A. NORTON, J., Concurs.
PATRICIA L. COHEN, J., Concurs in separate opinion.
PATRICIA L. COHEN, Judge, concurring.
I concur simply because at trial, Defendant failed to challenge the legitimacy of the race-neutral reason put forth by the State. See State v. Taylor, 944 S.W.2d 925, 934 (Mo. banc 1997); State v. Jackson, 925 S.W.2d 856, 864 (Mo.App. W.D.1996) (after state offered its explanation, defendant did not challenge state's explanation, thereby waiving the issue). I do not support the majority's view of the impact of State v. McFadden, 216 S.W.3d 673 (Mo. banc 2007) (McFadden II). In particular, in light of McFadden II, and on this record, the connection between an African-American's wearing of dreadlocks and undesirable individualism is dubious and casts serious doubt on the legitimacy of the State's proffered race-neutral reason. See id. at 676 (referring to the State's claim that an African American juror was struck for her "crazy red hair", the Court opined that "whether the State's explanation is race-neutral to begin with is dubious."). I also question the majority's assertion that there were "additional factors" present in McFadden II in addition to the "crazy red hair." To the contrary, in McFadden II, the trial court rejected the "other factors" and did not permit the strike on any other basis but the red hair. Id. at 675. The Supreme Court specifically held that the "State's justification for removing S.H. because of her hair color [was] not legitimate", id. at 677, and consequently found a "clear Batson violation in the State's removal of S.H. for having red hair." Id. at 675.
Unlike tattoos, "mohawks" or even red hair, dreadlocks are closely associated with "historically black cultures." See McCrea v. Gheraibeh, 380 S.C. 183, 669 S.E.2d 333, 335 n. 2 (2008) ("We find that counsel's specific reference to the juror's hair as `dreadlocks' in conjunction with an otherwise vague explanation for the strike, carries with it an inherently discriminatory intent."). Thus, where, as here, the State bases a peremptory strike on nothing more than an African-American venireperson's dreadlocks and a "conclusional inference" that such a person is "individualistic," McFadden II supports a very strong argument in favor of a successful Batson challenge, assuming, of course, a defendant pursues such a challenge. See McFadden, 216 S.W.3d at 677 ("... the State fails to articulate how S.H.'s red hair, even if it *319 were as unusual as the prosecutor found it, was related to the case other than another conclusional inference that S.H. was individualistic.").
NOTES
[1] All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.
[2] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[3] Defendant does not contest the sufficiency of the evidence on appeal, thus an extensive recitation of the facts surrounding the crime are not necessary.
[4] Defendant cites to the South Carolina Supreme Court case of McCrea v. Gheraibeh, in arguing that striking a juror based on dreadlocks is not a race-neutral reason for exercising a peremptory challenge. 380 S.C. 183, 669 S.E.2d 333, 335 (2008) (finding counsel's explanation that a juror's dreadlocks caused him "uneasiness" was insufficient to satisfy the race-neutral requirement in the second step of the trial court's Batson analysis). However, not only does McCrea have no precedential authority over this Court, but other courts have found the opposite. See Hastings v. Cambra, 2000 WL 307473, *10 (N.D.Cal. 2000) (finding the prosecutor's strike of a venireperson because he had dreadlocks and was young was a reasonable and race-neutral reason). Furthermore, Defendant here did not provide a record of his objection to the State's explanation as did the litigant in McCrea who specifically argued to the trial court that opposing counsel's proffered reason was insufficient and amounted to pretext. McCrea, 669 S.E.2d at 334.
[5] We acknowledge the Missouri Supreme Court's rejection in McFadden II of the State's explanation that the venireperson had "crazy red hair" and its corresponding rejection of the State's justification that the hair color rendered the venireperson "individualistic". The McFadden Court found this argument not to be legitimate, and therefore a pre-text for racial discrimination. McFadden II, 216 S.W.3d at 677. This case is distinguishable from McFadden II in several respects. First, in McFadden II the Court did not base its finding that the Batson challenge should have been granted on the argument that the State's explanation was not race-neutral. Id. While the McFadden II Court expressed strong doubts as to whether the State's explanation for striking the juror was race-neutral, it did not make a finding that the explanation was not race-neutral. Id. The Court's evaluation of the Batson challenge did not end at the second phase of the inquiry. Id. Instead, the Supreme Court proceeded to determine if the race-neutral explanation proffered by the State was a pretext for racial discrimination. Id. While a trial court normally may be expected to make a credibility determination as to whether the proffered reason was valid or a mere pretext for discrimination, Kesler-Ferguson, 271 S.W.3d at 560, Defendant's failure to object to the State's explanation in this case brought the Batson inquiry to an end at step two. Without Defendant's challenge to the explanation offered by the State, the trial court was not required to undertake the third step of evaluating pretext as was done in McFadden II. Second, additional factors were present in McFadden II that are not present in this case. In McFadden II, the prosecutor claimed to strike the venireperson because of her lack of a driver's license, her "crazy red hair," and his impression that she seemed hostile. Id. The Court found that "[i]n light of the totality of facts and circumstances, ... the prosecution's explanations [were] implausible and merely a pretext to exercise a peremptory strike for racially discriminatory reasons." Id. In this case, the prosecutor took issue only with the venireperson's individualistic hairstyle, noting he did not want an individualistic venireperson on the jury. No other evidence was pointed out by either the trial court or the Defendant that the prosecutor otherwise harbored a negative impression of Mays. Lastly, the McFadden II Court seems to place significant weight on the fact that both the prosecutor and the trial court presumed to identify the venireperson's difference in appearance from a "limited cultural view." Id. The trial judge in this case is also African-American, and when considering the explanation offered by the State for exercising its peremptory strikes, would not be restricted by a limited cultural view.