NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0479n.06

Case No. 23-3905

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Dec 03, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| RANDALL HINES, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | OPINION |

Before: KETHLEDGE, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. At Randall Hines' trial, the government used a peremptory strike on a black juror. Hines objected because he said the government's strike was motivated by race, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). But the district judge denied the *Batson* challenge because race-neutral reasons explained the government's decision. We agree and affirm.

I.

Randall Hines faced trial for armed bank robbery. At jury selection, the court asked the jurors if "you or any member of your immediate family or close personal friend have ever been arrested and charged with a crime?" R. 83, Pg. ID 665–66. Several jurors raised their hands, so the court asked them to describe the crime. Most of the jurors described state offenses like DUIs or disorderly conduct. The court then asked if each juror's relationship to the crime would affect his ability to be impartial.

Juror 28 raised her hand. The court instructed the juror and counsel to approach the bench for a sidebar. When the court asked if Juror 28 or a family member had been charged with a crime, she responded that her brother was "charged for, I guess, giving money to—that whole big case." *Id.* at 669–70. She explained that her brother had worked for Cuyahoga County, Ohio, and the charges were "all over the news and everything." *Id.* at 670. She also was under the impression that the charges "led to a criminal case because he was arrested." *Id.* at 671. Still, she believed that she could "render a fair and impartial determination" of Hines' guilt. *Id.*

The court let the government question Juror 28. The government asked for her brother's name. They also asked if she believed that her brother was "treated fairly . . . by law enforcement." *Id.* at 672. "Not really," she responded. "[H]e was just doing his job that he was instructed to do, but because—but he got blamed for it . . . So I don't think he—I don't feel like he was treated fairly." *Id.* at 672–73. She then mentioned another Cuyahoga County official involved in the same incident, which was a public corruption probe. As a final question, the government asked if Juror 28 was aware of any federal involvement in her brother's case, but she didn't think so.

Later that afternoon, peremptory challenges began. When Juror 28 entered the jury box, the government requested another sidebar with the court and counsel. The government stated it wanted to strike Juror 28.

Immediately, defense counsel raised a *Batson* challenge since Juror 28 is black. The court asked the government for a race-neutral explanation for the strike, and the government mentioned that Juror No. 28 "did not think her brother was treated fairly" in the Cuyahoga County case. *Id.* at 795–96. The government responded that federal authorities investigated some people in the brother's case. Because Juror 28 said that she didn't think her brother was treated fairly, and the federal government may have been part of that case, the government said there was a chance she

might be biased against the federal government in this matter, too. The court found this explanation to be race neutral.

The court gave Hines' counsel an opportunity to respond. He argued that the government "expresse[d] a completely different viewpoint" about the fitness of the black juror to serve than similarly situated non-minority jurors. *Id.* at 798. And he emphasized that the government didn't use a peremptory challenge until the sole black member of the venire sat down in the jury box.

After weighing the arguments, the court denied the *Batson* challenge. The case proceeded to trial, and the jury found Hines guilty on all counts. Hines now appeals the denial of his *Batson* challenge.

II.

Parties can't strike potential jurors because of their race. *Batson*, 476 U.S. at 89. If a party challenges a peremptory strike on *Batson* grounds, courts use a three-step inquiry to determine whether the strike was valid. First, the opponent of a peremptory challenge must make out "a prima facie case of racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (per curiam). Second, the strike's proponent must "come forward with a race-neutral explanation." *Id.* And third, the trial judge must decide "whether the opponent of the strike has proved purposeful racial discrimination." *Id.* At bottom, a peremptory strike cannot be "motivated in substantial part by discriminatory intent." *Flowers v. Mississippi*, 588 U.S. 284, 303 (2019) (citation omitted).

Here, the only issue is whether Hines has proven purposeful discrimination. To determine whether purposeful discrimination motivated a strike, courts assess "the persuasiveness of the prosecutor's justification for his peremptory strike." *Miller-El v. Cockrell*, 537 U.S. 322, 338–39 (2003). Because assessing the prosecutor's credibility is "peculiarly within a trial judge's

province," we defer to the district court's determination unless it is clearly erroneous. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (citation omitted).

The district court had ample reason to accept the prosecutor's race-neutral justification for striking Juror 28. This juror had a brother who had recently been charged in a public-corruption probe. She didn't "feel like [her brother] was treated fairly" by law enforcement. R. 83, Pg. ID 672–73. Although Juror 28 didn't know of any federal involvement in her brother's case, she mentioned another Cuyahoga County official who was tied to her brother and part of a federal probe. Thus, the government worried that the same federal agencies prosecuting Hines—the Federal Bureau of Investigation and United States Attorney's Office—may have also charged her brother.

Hines faults the government for not presenting proof of the federal investigation. But it's unreasonable to expect the government to have instantaneous proof of previous investigations for public corruption—not to mention that the prosecutors here were part of an unrelated violent-crimes unit. So, the district court had reason to accept the government's suspicion that Juror 28's brother had been part of a federal investigation, even if the government didn't have ready proof.

Indeed, we've previously affirmed the denial of a *Batson* challenge when the government raised similar concerns about a potential juror. In *United States v. Beverly*, for example, we declined to find a *Batson* violation for a peremptory strike on a juror with a brother who spent time in jail and had a nephew in jail. 369 F.3d 516, 527 (6th Cir. 2004). And in *United States v. Al-Din*, we upheld the denial of a *Batson* challenge where the juror had expressed "belief in the unfairness" of the criminal justice system. 631 F. App'x 313, 326 (6th Cir. 2015). The ultimate question we must ask is whether the district court clearly erred when it determined that the "prosecutor's proffered reason" was reasonable and did not "suggest a discriminatory purpose."

*United States v. Gore*, 118 F.4th 808, 819 (6th Cir. 2024). Here, it was reasonable for the district court to conclude the government struck Juror 28 because she believed the same law enforcement authorities involved in the *Hines* case treated her brother unfairly.

Hines' arguments to the contrary aren't persuasive. He points to a host of circumstantial evidence to show racial motivation, including comparisons to the government's treatment of other jurors and statements to the court. *See Flowers*, 588 U.S. at 301–02. But this evidence isn't enough to prove that the district court clearly erred.

First, Hines points to the many non-minority jurors in this panel who revealed that they or their close family members had run-ins with law enforcement. The government didn't question these jurors or use peremptory strikes on them. Hines takes this disparate treatment to mean that the government struck Juror 28 because of her race.

But these other jurors aren't useful comparators. They mentioned charges that state authorities likely would've investigated and prosecuted, such as DUIs, disorderly conduct, stabbing, leaving the scene of an accident, and similar state-law infractions. Juror 28, by contrast, mentioned her brother's involvement in a "big case" with potential federal involvement. R. 83, Pg. ID 669–70. So, it made sense the prosecution was more concerned about Juror No. 28 than the others. And while the government wasn't sure whether federal investigators were involved, bare suspicion can justify a peremptory strike. After all, parties can use peremptories "for any reason," so long as it's race-neutral. *Batson*, 476 U.S. at 89 (citation omitted).

What's more, the government *did* question the other juror who mentioned a crime that might have involved the federal government. Juror 30, who wasn't a minority, mentioned that her husband and two friends had been arrested for possession of marijuana while camping. The government asked if this occurred in a national park—and thus implicated federal authorities. The

juror replied that it didn't. So, throughout voir dire, the government tried to reveal any federal involvement in the cases that jurors mentioned.

Hines also takes issue with the government's failure to object to Juror 24. During voir dire, this juror revealed that he trained police officers in jiu-jitsu and his father was a police officer. But the government's treatment of this juror isn't helpful here. Comparative analyses only reveal purposeful discrimination where "a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). But Jurors 24 and 28 weren't similarly situated: one had a favorable view of law enforcement, the other didn't.

Finally, Hines objects to the government's statement during the *Batson* sidebar that Juror 28 was "upset" at how law enforcement treated her brother. Hines calls this inaccurate since Juror 28 never expressed "hostility or anger" towards law enforcement. Appellant Br. at 25. And he points out that "[w]hen a prosecutor misstates the record in explaining a strike, that misstatement can be another clue showing discriminatory intent." *Id.* (quoting *Flowers*, 588 U.S. at 314).

But here, the government's characterization of Juror 28 as "upset" didn't "misstate[] the record." *Flowers*, 588 U.S. at 314. It's true that Juror 28 didn't use the word "upset" to describe her emotions at how her brother was treated. But she did say that her brother wasn't treated fairly. Indeed, during the *Batson* sidebar, the government repeated these exact statements using the same language as Juror 28. And given that Juror No. 28 was clearly unhappy about how her brother was treated, it was fair for the government also to call her "upset." To the extent describing her as "upset" could mean anything different, defense counsel didn't object at the time. So, for all we know, it accurately captured Juror 28's tone and body language. We won't nitpick the government's statements based on a cold appellate record.

\*      \*      \*

The district court committed no error, let alone a clear one, in accepting the government's race-neutral explanation for striking Juror No. 28. We therefore affirm.