

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00317-CR

**DERRICK DWAYNE GRANT,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2007-1417-C2

## MEMORANDUM  OPINION

Derrick Dwayne Grant was charged with burglary of a habitation with a deadly weapon.  TEX. PENAL CODE ANN. 30.02 (Vernon 2003).  He pled guilty before the jury and proceeded to have the jury determine his punishment.  The jury assessed punishment at 55 years in prison.  Grant appeals.  Because there was clear error in the trial court's acceptance of the State's proposed race-neutral reasons for striking a black member of the jury panel, we reverse the trial court's judgment.[1]

---

[1] Because of this disposition, we need not address Grant's other issue on appeal regarding alleged trial court error in allowing the State to ask Grant's witness whether Grant should be placed on probation.

## *BATSON* **CHALLENGE**

Prior to the empanelling of the jury, Grant made a *Batson* challenge. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Grant informed the trial court that three black members of the jury panel were in the "strike zone," that the State struck all three members, and that Grant was a black male. The State did not dispute this presentation by Grant and when asked for a response, offered race-neutral reasons for its strikes. The trial court accepted those reasons. On appeal, Grant contends that the trial court erred in holding the State's peremptory challenges were not racially motivated.

### *Three-step Process*

*Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. *Snyder v. Louisiana*, ___ U.S. ___, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008). "'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.'" *Id.* (quoting *Miller-El v. Dretke*, 545 U.S. 231, 277, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2006) (Thomas, J., dissenting)). The exclusion of even one member of appellant's race from the jury panel for racial reasons invalidates the entire jury selection process. *See Snyde*r, 128 S.Ct. at 1208.

If the opponent of a challenged strike raises a question of purposeful discrimination and the trial court proceeds immediately to the State's race-neutral reasons for the strike, a reviewing court assumes that the opponent has satisfied the first step of the *Batson* process. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008) (citing *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). The second step of the process does not demand an explanation that is persuasive, or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The issue is the facial validity of the prosecutor's explanation. *Id*. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Id*. (quoting *Hernandez*, 500 U.S. at 360).

It is not until the third step that the persuasiveness or the justification of the strike becomes relevant. *Id*. "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id*. The prosecutor's proffered reasons for striking an individual must be evaluated in light of the circumstances of the case. *See Snyder v. Louisiana*, ___ U.S. ___, 128 S.Ct. 1203, 1210, 170 L.Ed.2d 175 (2008).

On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. *Snyder*, 128 S.Ct. at 1207; *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008). In reviewing the record for clear error, the reviewing court should consider the entire record of voir dire; it need not limit itself to arguments or considerations that the parties specifically called to the trial court's

attention so long as those arguments or considerations are manifestly grounded in the appellate record. *Watkins v. State*, 245 S.W.3d at 448; *accord Snyder*, 128 S.Ct. at 1208.

*A Step 3 Review*

In the early years of implementing the dictates of *Batson* by this State's courts, the Court of Criminal Appeals discussed and used a nonexclusive list of factors which would weigh against the legitimacy of a race-neutral explanation. *Whitsey v. State*, 796 S.W.2d 707, 713 (Tex. Crim. App. 1989). Those factors were:

> 1. The reason given for the peremptory challenge is not related to the facts of the case;
>
> 2. There was a lack of questioning to the challenged juror or a lack of meaningful questions;
>
> 3. Disparate treatment - persons with the same or similar characteristics as the challenged juror were not struck;
>
> 4. Disparate examination of members of the venire, *i.e.*, questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and
>
> 5. An explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id*. at 713-714. The presence of any one of those factors tended to show the Court that the State's reasons for the strike were not actually supported by the record or were an impermissible pretext. *Id*. While the courts in this State have not embraced the use of those factors, the concept provides a useful guide for us that fits within the framework of the current state of *Batson* reviews as established by the United States Supreme Court and the Fifth Circuit. It is in light of the recent case law by these Courts and these factors that we review this appeal.

*Juror 20*

At trial and on appeal, Grant complains about the State's use of a peremptory strike on Juror number 20, Jerrell Franklin. After Grant raised his *Batson* challenge and the trial court asked for a response, the State gave the following reason for striking Franklin.

> "…[H]is actually comes from his juror card. He noted on his juror card that his wife works at the Wal-Mart return center, which is from the information we have where the Defendant's – I don't know if she's a new girlfriend or somebody who's just been a part of his life for some period of time – has been—our information is that she also works there. It's a girl who is, I guess, seeing the Defendant off and on throughout the time that the victim is seeing him also works with that juror's wife. And we had some concerns about that because, obviously, people who work together talk and people who go home to their spouses talk to them about why they're in court." (RR II 159).

Grant responded,

> "In terms of Juror Number 20 and the relationship of the – any girlfriend Mr. Grant may have to anybody who works at Wal-Mart that would be the subject of an inquiry in chambers to see if that actually existed. My point here, Judge, is I don't believe you can rely on surmise and speculation in order to prove – to disprove a prima facie case of systemic racial discrimination of blacks from this jury just based on the speculation that they may or may not know anybody. I believe it has to be the subject of specific inquiry into those arenas and areas in order for it to get over the prima facie case." (RR II 161).

The trial court accepted the State's reason for the strike as race-neutral. Grant challenges the legitimacy of that reason. Specifically, Grant complains that the State did not question Franklin regarding the reason for its strike.

The State must engage in meaningful voir dire examination on a subject it alleges it is concerned about. *See Miller-El*, 545 U.S. 231, 246, 125 S.Ct. 2317, 162 L.Ed.2d 196

(2006). If the State does not engage in meaningful voir dire examination, that failure is some evidence that the asserted reason for the strike was a pretext for discrimination. *Reed v. Quarterman*, 555 F.3d 364, 376 (5th Cir. 2009).

In reviewing the entire voir dire, we note that Franklin was asked a total of three questions. First, he was specifically asked how he decided if he believed someone. He answered, "What they're saying would have to make sense to me." Second, as the sixth person to answer a question about whether anybody could think of a reason why a victim might be scared to testify against her abuser, Franklin answered, "Pretty much the same," which was in reference to a previous response by another member of the panel. And third, as a group, the panel was asked which theory of punishment would be the most important. As the 19th person to respond, Franklin, said, "Number three" which he had been told was rehabilitation. None of Franklin's answers were investigated further by the State. And absolutely no exchange between Franklin and the State took place regarding the reason for striking him, that being his wife worked at the same place as Grant's girlfriend.[2]

In light of these circumstances, there was no meaningful examination of Franklin regarding the reason the State used to strike him. The State's reason for striking Franklin was not supported by the record and was, thus, a pretext for discrimination.

---

[2] The juror information cards are not a part of this record. Also, there is no testimony that would indicate any of the other jurors had spouses that worked with Grant's girlfriend.

Accordingly, the trial court's acceptance of the State's reason for striking Franklin was clearly erroneous. Grant's first issue is sustained. [3]

**CONCLUSION**

Having sustained Grant's first issue, the trial court's judgment is reversed. This case is remanded for further proceedings consistent with this opinion.

TOM GRAY<br>
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Justice Reyna dissenting)
Reversed and remanded
Opinion delivered and filed May 20, 2009
Do not publish
[CRPM]

---

[3] Because the exclusion of even one member of Grant's race from the jury panel for racial reasons invalidates the entire jury selection process, we need not discuss whether the trial court erred in accepting the State's reasons for striking the other two black panel members.