IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00317-CR

 

Derrick Dwayne Grant,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2007-1417-C2

 



MEMORANDUM  Opinion










 

            Derrick Dwayne Grant was charged with
burglary of a habitation with a deadly weapon.  Tex. Penal Code Ann. 30.02 (Vernon 2003).  He pled guilty
before the jury and proceeded to have the jury determine his punishment.  The
jury assessed punishment at 55 years in prison.  Grant appeals.  Because there
was clear error in the trial court’s acceptance of the State’s proposed
race-neutral reasons for striking a black member of the jury panel, we reverse
the trial court’s judgment.[1]

Batson Challenge

            Prior to the empanelling of the jury, Grant made a Batson challenge.  See Batson v. Kentucky,
476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  Grant informed the trial
court that three black members of the jury panel were in the “strike zone,”
that the State struck all three members, and that Grant was a black male.  The
State did not dispute this presentation by Grant and when asked for a response,
offered race-neutral reasons for its strikes.  The trial court accepted those
reasons.  On appeal, Grant contends that the trial court erred in holding the
State’s peremptory challenges were not racially motivated.  

Three-step Process

            Batson provides a three-step
process for a trial court to use in adjudicating a claim that a peremptory
challenge was based on race.  Snyder v. Louisiana, ___ U.S. ___, 128
S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008).  "'First, a defendant must make
a prima facie showing that a peremptory challenge has been exercised on the
basis of race[; s]econd, if that showing has been made, the prosecution must
offer a race-neutral basis for striking the juror in question[; and t]hird, in
light of the parties' submissions, the trial court must determine whether the
defendant has shown purposeful discrimination.'"  Id. (quoting Miller-El
v. Dretke, 545 U.S. 231, 277, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2006)
(Thomas, J., dissenting)).  The exclusion of even one member of appellant's
race from the jury panel for racial reasons invalidates the entire jury
selection process.  See Snyder, 128 S.Ct. at 1208.

            If the opponent of a challenged strike
raises a question of purposeful discrimination and the trial court proceeds
immediately to the State’s race-neutral reasons for the strike, a reviewing
court assumes that the opponent has satisfied the first step of the Batson
process.  Watkins v. State, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008)
(citing Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114
L.Ed.2d 395 (1991)).  The second step of the process does not demand an
explanation that is persuasive, or even plausible.  Purkett v. Elem, 514
U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).  The issue is the facial
validity of the prosecutor’s explanation.  Id.  Unless a discriminatory
intent is inherent in the prosecutor’s explanation, the reason offered will be
deemed race neutral.  Id. (quoting Hernandez, 500 U.S. at 360).  

            It is not until the third step that
the persuasiveness or the justification of the strike becomes relevant.  Id. 
“At that stage, implausible or fantastic justifications may (and probably will)
be found to be pretexts for purposeful discrimination.”  Id.  The
prosecutor’s proffered reasons for striking an individual must be evaluated in
light of the circumstances of the case.  See Snyder v. Louisiana,
___ U.S. ___, 128 S.Ct. 1203, 1210, 170 L.Ed.2d 175 (2008).  

            On appeal, a trial court's ruling on
the issue of discriminatory intent must be sustained unless it is clearly
erroneous.  Snyder, 128 S.Ct. at 1207; Watkins v. State, 245
S.W.3d 444, 448 (Tex. Crim. App. 2008).  In reviewing the record for clear error,
the reviewing court should consider the entire record of voir dire; it need not
limit itself to arguments or considerations that the parties specifically
called to the trial court's attention so long as those arguments or
considerations are manifestly grounded in the appellate record.  Watkins v.
State, 245 S.W.3d at 448; accord Snyder, 128 S.Ct. at 1208.

A Step 3 Review

            In the early years of implementing the
dictates of Batson by this State’s courts, the Court of Criminal Appeals
discussed and used a nonexclusive list of factors which would weigh against the
legitimacy of a race-neutral explanation.  Whitsey v. State, 796 S.W.2d
707, 713 (Tex. Crim. App. 1989).  Those factors were:  

1.  The reason given for the peremptory challenge
is not related to the facts of the case;

 

2.  There was a lack of questioning to the
challenged juror or a lack of meaningful questions;

 

3.  Disparate treatment - persons with the same or
similar characteristics as the challenged juror were not struck;

 

 4.  Disparate examination of members of the
venire, i.e., questioning a challenged juror so as to evoke a certain
response without asking the same question of other panel members; and

 

 5.  An explanation based on a group bias where
the group trait is not shown to apply to the challenged juror specifically.

 

Id.
at 713-714.  The presence of any one of those factors tended to show the Court
that the State's reasons for the strike were not actually supported by the
record or were an impermissible pretext.  Id.  While the courts in this
State have not embraced the use of those factors, the concept provides a useful
guide for us that fits within the framework of the current state of Batson
reviews as established by the United States Supreme Court and the Fifth
Circuit.  It is in light of the recent case law by these Courts and these
factors that we review this appeal.

Juror 20

            At trial and on appeal, Grant
complains about the State’s use of a peremptory strike on Juror number 20,
Jerrell Franklin.  After Grant raised his Batson challenge and the trial
court asked for a response, the State gave the following reason for striking
Franklin.

“…[H]is actually comes from his juror card.  He
noted on his juror card that his wife works at the Wal-Mart return center,
which is from the information we have where the Defendant’s – I don’t know if
she’s a new girlfriend or somebody who’s just been a part of his life for some
period of time – has been—our information is that she also works there.  It’s a
girl who is, I guess, seeing the Defendant off and on throughout the time that
the victim is seeing him also works with that juror’s wife.  And we had some
concerns about that because, obviously, people who work together talk and
people who go home to their spouses talk to them about why they’re in court.” 
(RR II 159).

 

Grant responded,

“In terms of Juror Number 20 and the relationship
of the – any girlfriend Mr. Grant may have to anybody who works at Wal-Mart
that would be the subject of an inquiry in chambers to see if that actually
existed.  My point here, Judge, is I don’t believe you can rely on surmise and
speculation in order to prove – to disprove a prima facie case of systemic
racial discrimination of blacks from this jury just based on the speculation
that they may or may not know anybody.  I believe it has to be the subject of
specific inquiry into those arenas and areas in order for it to get over the
prima facie case.”  (RR II 161).

 

            The trial court accepted the State’s
reason for the strike as race-neutral.  Grant challenges the legitimacy of that
reason.  Specifically, Grant complains that the State did not question Franklin
regarding the reason for its strike.  

            The State must engage in meaningful
voir dire examination on a subject it alleges it is concerned about.  See
Miller-El, 545 U.S. 231, 246, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2006). 
If the State does not engage in meaningful voir dire examination, that failure
is some evidence that the asserted reason for the strike was a pretext for
discrimination.   Reed v. Quarterman, 555 F.3d 364, 376 (5th Cir. 2009).


            In reviewing the entire voir dire, we
note that Franklin was asked a total of three questions.  First, he was
specifically asked how he decided if he believed someone.  He answered, “What
they’re saying would have to make sense to me.”  Second, as the sixth person to
answer a question about whether anybody could think of a reason why a victim
might be scared to testify against her abuser, Franklin answered, “Pretty much
the same,” which was in reference to a previous response by another member of
the panel.  And third, as a group, the panel was asked which theory of
punishment would be the most important.  As the 19th person to respond,
Franklin, said, “Number three” which he had been told was rehabilitation.  None
of Franklin’s answers were investigated further by the State.  And absolutely
no exchange between Franklin and the State took place regarding the reason for
striking him, that being his wife worked at the same place as Grant’s
girlfriend.[2]  

            In light of these circumstances, there
was no meaningful examination of Franklin regarding the reason the State used
to strike him.  The State's reason for striking Franklin was not supported by
the record and was, thus, a pretext for discrimination.  Accordingly, the trial
court’s acceptance of the State’s reason for striking Franklin was clearly
erroneous.  Grant’s first issue is sustained. [3]   

Conclusion

            Having sustained Grant’s first issue,
the trial court’s judgment is reversed.  This case is remanded for further
proceedings consistent with this opinion.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice Reyna,
and

            Justice Davis

            (Justice
Reyna dissenting)

Reversed and remanded

Opinion delivered and
filed May 20, 2009

Do not publish

[CRPM]









[1]
Because of this disposition, we need not address Grant’s other issue on appeal
regarding alleged trial court error in allowing the State to ask Grant’s
witness whether Grant should be placed on probation.





[2] The
juror information cards are not a part of this record.  Also, there is no
testimony that would indicate any of the other jurors had spouses that worked
with Grant’s girlfriend.

 





[3]
Because the exclusion of even one member of Grant’s race from the jury panel
for racial reasons invalidates the entire jury selection process, we need not
discuss whether the trial court erred in accepting the State’s reasons for
striking the other two black panel members.