

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0304-18

**GREGORY DEWAYNE TENNYSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### SMITH COUNTY

**ALCALA, J., filed a dissenting opinion.**

### OPINION DISSENTING FROM REFUSAL OF APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

Gregory Dewayne Tennyson, appellant, has demonstrated that the State's use of peremptory strikes removed all prospective African American jurors and that the State's use of at least one of these strikes was not race neutral. I would hold that appellant has satisfied his burden to show purposeful discrimination in this case, and I would accordingly grant appellant's petition for discretionary review challenging the decision of the court of appeals that had found no persuasive evidence of purposeful racial discrimination. I, therefore,

respectfully dissent from this Court's refusal to address the merits of appellant's petition for discretionary review.

## I. Background

In describing the background of this case, I will review the trial proceedings and the court of appeals's opinion.

### A. Trial Proceedings

Appellant pleaded not guilty to aggravated assault on a public servant and, at his jury trial, the attorneys participated in jury selection. After the attorneys conducted their voir dire examinations and the judge heard challenges for cause, the attorneys turned in the lists of their peremptory strikes. The State struck prospective jurors numbered 3, 4, 14, 15, 17, 19, 26, 27, 30, and 36. Of these ten stricken prospective jurors, three were African American: prospective jurors 14, 15, and 30, and these three comprised one-hundred percent of the African Americans who potentially could have served on the jury that were within the "zone of strikes."

Trial counsel for appellant challenged the State's attempt to remove all the African American potential jurors from the panel. In his *Batson* motion, trial counsel argued to the court that appellant is an African American man who would be improperly tried by "an all white jury." *See Batson v. Kentucky*, 476 U.S. 79, 86 (1986). The trial court determined that appellant had made a prima facie case of purposeful discrimination and asked the prosecutor

for his race-neutral reasons for striking the only three African Americans within the strike zone.

### *Prospective Juror Number 14*

The State prosecutor observed that prospective juror number 14 was a manager at McDonald's with a two-year degree.  The prosecutor explained, "This is unskilled labor that we're familiar with, in our experience as prosecutors in cases like this, that lend—type of work experience that would lend itself to be sympathetic toward criminal defendants."  The prosecutor noted that, regardless of the prospective juror's college degree, in his "experience and [his] impression of that is that it's unskilled labor."  Also, the prosecutor said that the prospective juror favored rehabilitation over punishment when assessing a sentence.  Furthermore, a relative of the prospective juror had been prosecuted for murder in Smith County.  The prosecutor stated, "That would lead me to believe she might carry a bias against the Smith County District Attorney's Office in a subsequent criminal prosecution."  Defense counsel responded to the State's explanation by arguing that this prospective juror had indicated, when asked by the State, that she did not have a bias against the Smith County District Attorney's Office.  The prosecutor then responded that he believed that "she might harbor a bias nonetheless," and that in his training and experience, "folks that have family members who have been previously prosecuted for the offense of first-degree murder would harbor ill will towards my office and could not be fair jurors in our cases."  He also said that "no other potential juror had a family member prosecuted by my office for murder."

*Prospective Juror Number 15*

The State explained that prospective juror number 15 is a custodian "which is also unskilled labor with a two-year degree." The prosecutor said that the prospective juror indicated that he favored "rehab over punishment in terms of assessing sentences in criminal cases." The prosecutor asserted that the prospective juror "served previously on a Smith County jury and assessed a sentence on the lower end of the punishment range" in that drug case against a person who had prior felony convictions.

*Prospective Juror Number 30*

The State explained that prospective juror number 30 is "a unit tech[nician]" at a hospital who does not have a license or a certification and is therefore an unskilled laborer. He commented that he believed that "she works in the lower level of labor at [the hospital], probably in some sort of care capacity that would make her sympathetic for individuals in circumstances that may be perceived as dire." He noted that she indicated during voir dire that she favored "rehab over punishment." Furthermore, he observed that she was single with no children with a high school education only. The prosecutor opined that those factors "would indicate someone who would not be a favorable State's juror in a case such as this one."

The trial court accepted the State's explanations as race neutral and genuine, and it overruled defense counsel's *Batson* motion. Because neither party used peremptory strikes on them, the following prospective jurors were ultimately seated on the jury in this case: 5,

6, 9, 11, 21, 24, 28, 32, 34, 35, 38, and 39.[1]  The jury found appellant guilty of aggravated assault on a public servant and assessed a life sentence.

**B. Court of Appeals's Opinion**

The court of appeals rejected appellant's claim that the trial court had erred in overruling the *Batson* motion.  *See Tennyson v. State*, No. 12-16-00225-CR, 2018 WL 1180750, at *5 (Tex. App.—Tyler March 7, 2018) (mem. op., not designated for publication).  The court of appeals found that "[n]o discriminatory intent is inherent in the prosecutor's explanations" and that "the reasons offered are race neutral."  *Id.* at *3.  The court of appeals determined that, after reviewing the entire voir dire record and giving proper deference to the trial court's implicit credibility determinations, the trial court did not clearly err in finding that the State's proffered reasons for striking the jurors were not a pretext for purposeful racial discrimination.  *Id*. at *5.  The court of appeals noted that the venire members were examined in a group rather than individually, which significantly lowered the evidentiary value of a lack of questioning.  *Id*. at *4.

With respect to the individual reasons given by the State for its strikes, the court of appeals upheld those reasons as genuine because the trial record was inadequate to show otherwise and the combination of reasons as to each of the minority jurors justified each

---

[1]  The State struck prospective jurors numbered: 3, 4, 14, 15, 17, 19, 26, 27, 30, and 36.  Appellant struck prospective jurors numbered: 1, 2, 13, 16, 18, 25, 29, 31, 40, and 41.  The trial court granted challenges for cause against prospective jurors numbered: 7, 8, 10, 12, 33, and 37.  Prospective jurors 20, 22, and 23 were excused by agreement under Article 35.05.  *See* TEX. CODE CRIM. PROC. art. 35.05.  After excusals by agreement and strikes for cause, the strike zone was set to include and end at prospective juror number 41.

peremptory strike. The court of appeals determined it was "unable to compare the treatment of the venire members on the issues of education, employment, marital status, and parental status because the juror cards of only the three contested venire members were admitted into evidence." *Id*. at *5. However, it could compare juror selection based on favoring rehabilitation over punishment. *Id*. It found that, of the ten venire members struck by the State, nine favored rehabilitation. *Id*. It noted that, "in addition to the three African American venire members who favored rehabilitation, six nonblack venire members who favored rehabilitation were struck by the State," but "ten nonblack potential jurors who favored rehabilitation were not struck by the State." *Id*. Although the State struck all three African American potential jurors but only six of sixteen nonblack potential jurors favoring rehabilitation over punishment, the court of appeals found that such disparity did not reveal clear evidence of racial discrimination. *Id*. Because it had only ten peremptory strikes and could not remove all potential jurors favoring rehabilitation, the "State could plausibly have used the rehabilitation factor along with its other proffered reasons to decide to strike the three [African American] venire members and not others without the existence of racial discrimination." *Id*.

## II. Analysis

Having struck every potential African American juror, the prosecutor's purportedly race-neutral explanations should be closely scrutinized for evidence of purposeful discrimination. Below, I will review the applicable law for *Batson* complaints, and then

examine the prosecutor's stated reasons for exercising his peremptory strikes against all of the African American prospective jurors to demonstrate why those reasons are pretextual and show racial bias. I will conclude by explaining why the current method for reviewing *Batson* complaints may be inadequate for inoculating the criminal justice system against the cancer of racial prejudice.

### A. Applicable Law for Review of *Batson* Claims

A *Batson* claim that a peremptory strike has been improperly used to remove a prospective juror on the basis of race is addressed through a three-part inquiry. First, the opponent of the strike must make a prima facie case that the strike was purposeful racial discrimination. Second, the proponent of the strike must give a facially race-neutral explanation for the strike. Third, the trial court must determine if the proffered race-neutral explanation is genuine or pretextual. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). In reviewing *Batson* claims, courts must consider at least two matters that are at issue in the instant case. First, a court should examine whether the State used peremptory strikes on minority-race prospective jurors but did not strike similarly situated people who were not of a minority race. Although the State's explanations may present facially race-neutral reasons for excluding prospective jurors from a racial minority group, the Supreme Court has explained that reviewing courts must consider the disparate treatment of similar prospective jurors to assess the State's true motive. *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). It stated, "More powerful than [bare statistics of use of peremptory challenges],

however, are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve." *Id*. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Id*.[2] The Supreme Court explained,

> [T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it. It is true that peremptories are often the subjects of instinct, and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.

*Id*. at 251-52 (internal citations and quotations omitted).

Second, a court should examine whether the State questioned the prospective jurors during voir dire about the matter on which it relies as its stated rationale for using its peremptory strikes on all of the minority jurors. The State's lack of questioning to gain a complete understanding of how its stated reasons would affect a prospective juror's ability to render judgment, as opposed to offering a conclusion based on a generalized "impression"

---

[2] "If the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, this is evidence that the asserted justification was a pretext for discrimination." *Reed v. Quarterman*, 555 F.3d 364, 376 (5th Cir. 2009). "Striking a black panelist for reasons that apply as well to similar nonblacks who serve 'is evidence tending to prove purposeful discrimination.'" *Williams v. Norris*, 576 F.3d 850, 864 (8th Cir. 2009) (quoting *Miller–El v. Dretke*, 545 U.S. 231, 241 (2005)).

or "experience," strengthens the inference that its reasons were not genuine. *See Reed v. Quarterman*, 555 F.3d 364, 376 (5th Cir. 2009) ("If the State asserts that it was concerned about a particular characteristic but did not engage in meaningful voir dire examination on that subject, then the State's failure to question the juror on that topic is some evidence that the asserted reason was a pretext for discrimination.").

**B. The Prosecutor's Purported Race-Neutral Reasons for Striking All of the African American Prospective Jurors Were Not Genuine**

The prosecutor stated that he struck all of the African American prospective jurors for reasons that included employment involving unskilled labor, prior jury service, and preference for rehabilitation over punishment. I review each of these reasons to demonstrate that they were not genuinely race-neutral bases for peremptory strikes.

**1. Unskilled Labor**

The prosecutor averred that he struck all of the potential African American jurors because they were "unskilled labor." On its face, the reason is patently absurd as to prospective jurors 14 and 15, who each have a college degree and are educated beyond a high school diploma. Prospective juror number 14 works as a manager, which is not necessarily "unskilled labor." In any event, the prosecutor did not strike the following prospective jurors who were not African Americans but who were unskilled laborers: prospective juror number 13 who works as a gallery director and has a four-year degree; prospective juror number 16 who works as a secretary and has a high school diploma only; and prospective juror number

29 who identified as self-employed at a wells-services company and has a two-year degree.[3]

There is no plausible reason to prefer a secretary with a high school diploma over a custodian or a McDonald's manager who have two-year degrees under the theory that the former has skilled employment while the latter have unskilled employment. Moreover, the State did not ask the prospective jurors any questions about their skill level or whether or how that would affect their deliberations in this case. And the State disregarded the actual education level of the prospective jurors, two of whom were college graduates with two-year degrees, so as to focus on the purported skill level of the occupation instead.

Importantly, the prosecutor espoused a belief that unskilled laborers are more sympathetic to "criminal defendants" and used that rationale to strike all of the African American prospective jurors from the panel. If that rationale is accepted as genuine by courts, then *Batson* will be a nullity. According to a 2016 report by the Bureau of Labor Statistics, thirty percent of employed African Americans worked in management, professional, and related occupations, which means that seventy percent of them possibly

---

[3] I note that, although the appellate record does not include juror information cards for the entire panel, the juror information cards for prospective jurors 13, 16, and 29 are included in the record along with the information cards for the three African American prospective jurors. Although we are unable to conduct a full disparate treatment analysis on the issue of unskilled labor due to the absence of juror information cards for the entire panel, the juror information cards for these three additional jurors provide some basis upon which we can examine disparate treatment. Even the limited information provided in these three jurors' information cards shows that the State's proffered reasons for its strikes pertaining to unskilled labor could have applied equally to other non-African American prospective jurors.

could be considered unskilled laborers.[4]  If the prosecutor's reason for striking all of the African American prospective jurors on the basis of being unskilled laborers is deemed credible here, regardless of the fact that two of the prospective jurors had college degrees, then the principles underlying *Batson* are essentially overruled because the vast majority of African American potential jurors can be struck freely because of their race under this false rationale that there is a connection between the skill of an occupation and leniency for defendants.[5]  Peremptory strikes of people who are of a minority race on the basis that they perform unskilled labor, particularly when people who are not of a minority race and who perform unskilled labor are permitted to stay on a jury, are pretextual and violate *Batson*. *See Miller-El*, 545 U.S. at 241.

### 2. Prior Jury Service

The State indicated that it struck prospective juror number 15 because he had previously served on a jury and had assessed a light sentence for a person with a criminal history.  The record shows that several other prospective jurors within the strike zone also had prior jury service.  Two prospective jurors, numbered 11 and 28, said that the verdict in their respective previous jury service was not guilty so that no sentence was assessed at all.

---

[4]      U.S. DEP'T OF LAB., BUREAU OF LAB. STATS. REPORTS, LABOR FORCE CHARACTERISTICS BY RACE AND ETHNICITY, 2016 (October 2017), https://www.bls.gov/opub/reports/race-and-ethnicity/2016/home.htm (last visited Oct. 23, 2018).

[5]      I note that such a result is especially troubling given that minorities are already at greater risk of under-representation in jury pools in general.  *See* Geoffrey Cockrell, *Batson Reform: A Lottery System of Affirmative Selection,* 11 NOTRE DAME J. L. ETHICS & PUB. POL'Y 351, 353-54, nn.16-17 (1997).

The State's proffered reason for striking juror number 15 due to his having assessed punishment at the lower end of the range of punishment is suspect given that the State did not exercise strikes against prospective jurors 11 and 28, non-African American people who had acquitted the defendants in those cases. A prospective juror unwilling to convict at all is certainly less favorable to the State as compared to one who is willing to convict but assesses a low sentence. The State's explanation that it struck the African American prospective juror due to a perceived inclination to favor defendants by assessing lower sentences cannot be deemed genuine given that the State did not strike the non-African American prospective jurors who more significantly favored defendants in prior jury service by acquitting those defendants outright. *See Snyder v. Louisiana*, 552 U.S. 472, 484-85 (2008) (finding purposeful discrimination when the proffered race-neutral reason applied with greater force to unchallenged nonblack prospective jurors). Furthermore, the State did not question prospective jurors 11 and 28 about how their prior jury service might impact their decision in the instant case, and thus the State's rationale for its peremptory strike against prospective juror number 15 is additionally suspect for this reason.

### 3. Preference for Rehabilitation over Punishment

The prosecutor averred that the African American prospective jurors' preference for rehabilitation over punishment was a basis for striking each of them. During his voir dire, the prosecutor learned that twenty-five venire members, the majority of the potential jurors in the strike zone, favored rehabilitation over punishment: prospective jurors 2, 3, 4, 5, 6, 7,

12, 14, 15, 18, 19, 20, 22, 23, 24, 26, 27, 29, 30, 33, 35, 36, 37, 38, and 39. The State used peremptory strikes on prospective jurors 3, 4, 14, 15, 17, 19, 26, 27, 30, and 36. If the State's explanation were genuine that it did not have enough strikes to strike all twenty-five people who favored rehabilitation and that it was using strikes in a non-discriminatory manner, then the State would have exercised its peremptory strikes on the first ten jurors who held this view: prospective jurors numbered 2, 3, 4, 5, 6, 14, 15, 18, 19, and 24. But instead, the State found the non-African American prospective jurors numbered 2, 5, 6, 18, and 24 to be acceptable on this basis, whereas African American prospective jurors numbered 14, 15, and 30 were not. Furthermore, if the State's reasons were genuine, then it would not have used a peremptory strike on prospective juror number 17, a non-African American juror who favored punishment over rehabilitation, and instead it would have used that strike to remove another non-African American juror who favored rehabilitation. It is simply inaccurate to suggest that the State struck as many non-African American jurors as it could who favored rehabilitation in light of the State's use of a strike on juror number 17 instead of using that strike on another non-African American juror who favored rehabilitation. The State allowed non-minorities who favored rehabilitation to remain on the jury whereas it struck all of the minorities who favored rehabilitation. Thus, the State's reasons for its strikes were not genuine and are indicative of purposeful discrimination.

According to the court of appeals's opinion, even though the State did not strike all of the non-African Americans who favored rehabilitation over punishment, the State's strikes

against the African Americans could be race neutral. *See Tennyson*, 2018 WL 1180750, at *5. The court explained that the "State could plausibly have used the rehabilitation factor along with its other proffered reasons to decide to strike the three venire members and not others without the existence of racial discrimination." *Id*. The problem with the court of appeals's analysis is that the State's proffered reasons, at least as to two of the three prospective African American jurors, do not provide a plausible basis for separating them from the non-African American prospective jurors on any basis other than race. The cumulation of non-race-neutral reasons cannot add up to a proper race-neutral reason. Perhaps the court of appeals's rationale could be correct as to prospective juror number 14 who had a relative prosecuted for murder, but its reasoning is wholly inadequate as to the other two African American prospective jurors. Although I agree that it may be proper to use a peremptory strike against a prospective juror whose relatives have been prosecuted for a crime, even that reason becomes suspicious when all of the prospective African American jurors are removed from the panel by the State and when its reasons for doing so are not equitably applied in the same manner to the non-minority prospective jurors. Given this record, it appears clear to me that the State's purported reasons for striking one-hundred percent of the African American jurors who could have served on this jury were not genuinely race neutral.

**B. It May Be Time to Reform *Batson* to Provide More Than Illusory Scrutiny**

I agree with critics who have opined that *Batson* is often an inadequate vehicle for eliminating racial prejudice from jury selection. *See, e.g.,* Leonard L. Cavise, *The Batson Doctrine: The Supreme Court's Utter Failure to Meet the Challenge of Discrimination in Jury Selection*, 1999 WIS. L. REV. 501, 501-02 (1999). "Only the most overtly discriminatory or impolitic lawyer can be caught in *Batson*'s toothless bite and, even then, the wound will be only superficial." *Id.* Legal commentators have noted how courts have struggled judging whether a facially race-neutral explanation is, in fact, neutral because "[a] large variety of explanations can be surrogates for race, gender, or ethnicity." *Id.* at 532-37. A determination that race-neutral explanations are genuine or credible, to some degree, depends on the plausibility of those proffered reasons. *Id.* at 538. But plausibility is not required of the State's proffered reasons. *See Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (holding that race-neutral explanations must be genuine but not persuasive or even plausible). For example, "trial courts often accept race-neutral reasons that are easy to invoke and/or difficult to disprove, such as demeanor evidence, or which correlate with race, such as having a family member who had been a criminal defendant." Alafair S. Burke, *Prosecutors and Peremptories*, 97 IOWA L. REV. 1467, 1470 (2012). Accordingly, "*Batson* and its progeny have proven to be less an obstacle to discrimination than a roadmap to it." Cavise, *supra*, at 545.[6]

---

[6]     *Batson*'s burden-shifting framework is seen by many as so ineffective that alternate approaches to race-neutral jury selection have been proposed, including eliminating peremptory challenges altogether, employing affirmative-action principles into jury selection, imposing specific ethical rules on counsel that afford disciplinary sanctions for purposeful discrimination, and using

If any implausible or outlandish reason that was never even discussed with a prospective juror can be accepted as a genuine race-neutral strike by a trial court, as here, and if appellate courts simply defer to trial courts, as here, then *Batson* is rendered meaningless, and it is time for courts to enact alternatives to the current *Batson* scheme to better effectuate its underlying purpose. Here, the State said it was striking African Americans who had college degrees for being unskilled labor, but it did not strike a Caucasian secretary without a college degree; the State struck African Americans who had assessed lower punishment during their prior jury service under the theory that they might favor this appellant, but it did not strike non-African Americans who had more favorably treated other defendants during their trials by acquitting them; and the State struck African Americans who favored rehabilitation over punishment while allowing non-African Americans who felt the same way to remain on the jury. If this record is inadequate to establish a *Batson* violation, then the

---

blind questionnaires and video recording of questioning in voir dire. *See* Alafair S. Burke, *Prosecutors and Peremptories*, 97 IOWA L. REV. 1467, 1471-72 (2012). In recognition of the failure of the current framework to effectively combat racial discrimination during jury selection, the Washington State Supreme Court recently announced a modified *Batson* inquiry. *State v. Jefferson*, __ P.3d__, No. 94853-4, 2018 WL 5732128, at *1 (Wash. Nov. 1, 2018). In order "to do better to achieve the objectives of protecting litigants' rights to equal protection of the laws and jurors' rights to participate in jury service free from racial discrimination," the court held that "[i]f a *Batson* challenge to a peremptory strike of a juror proceeds to that third step of *Batson*'s three-part inquiry, then the trial court must ask whether an objective observer could view race or ethnicity as a factor in the use of the peremptory strike." *Id*. "If so, then the strike must be denied and the challenge to that strike must be accepted." *Id*.; *see also id.* at *12 ("[W]e hold that the question at the third step of the *Batson* framework is not whether the proponent of the peremptory strike is acting out of purposeful discrimination. Instead the relevant question is whether 'an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge.'"). Additionally, because this modified third step applies an objective standard, the decision of the trial court is to be reviewed *de novo* rather than under *Batson*'s deferential "clearly erroneous" standard of review. *Id*. at *12.

problem lies with *Batson*'s framework and it must be reformed to provide more than illusory protections against racial discrimination.

### III. Conclusion

Because I conclude that it was clear error for the trial court to find that appellant did not rebut the State's pretextual race-neutral reasons for its strikes given the totality of the voir dire record and the disparate treatment of other non-African American prospective jurors, I would grant appellant's petition for discretionary review. Because this Court does not, I respectfully dissent.

Filed: December 5, 2018

Publish